[No. 897.]

## HENRY SCHAFER, RESPONDENT, v. GILMER & SALISBURY, APPELLANTS.

INSTRUCTIONS—PLEADINGS—EVIDENCE.—The instructions given by the court must be considered with reference to the pleadings and the evidence. The court is not required to instruct the jury upon any question not raised by the pleadings nor authorized by the evidence.

STAGE PROPRIETORS—LIABILITY FOR INJURIES RECEIVED BY PASSENGERS.— Proprietors of stage-coaches are liable for any injury that a passenger may receive on account of their negligence to furnish prudent, skillful and sober drivers.

IDEM—DUTY OF THE JURY.—It is the duty of the jury to determine the nature and extent of the injuries received by the plaintiff as a passenger upon defendants' stage-coach, and to consider such injuries in making up their verdict.

PERJURY OF WITNESS—INSTRUCTIONS.—During the trial the court asked Wadleigh, the driver of the stage, this question: "Did the stage tip over that day between Robinson and Cherry creek?" Wadleigh answered: "I swear positively that it did not." To the same question Schafer, the plaintiff, answered: "Yes, sir; I am positive it did." The court, of its own motion, instructed the jury as follows: "In this case there is plain perjury on one side or the other. Either the plaintiff, Henry Schafer, committed perjury or the witness Wadleigh, and on one or the other of them ought to be in the penitentiary, instead of being in this court-room:" *Held*, not erroneous.

DAMAGES, WHEN NOT EXCESSIVE.—The plaintiff claimed that, by the upsetting of defendants' stage-coach, he was so badly injured as to produce pneumonia, and that the disease of his lungs, arising from such injuries, had become incurable. Upon this question there was a *direct conflict of evidence*: *Held*, that if the jury believed the testimony offered upon the part of plaintiff to be true, a verdict in his favor of five thousand dollars was not excessive.

APPEAL from the District Court of the Sixth Judicial District, Eureka County.

The eighth instruction referred to in the opinion of the court reads as follows: "If you find that the plaintiff took passage on the stage of the defendants to be transported from Cherry creek to Robinson, and while on the road the driver of the coach became so intoxicated as to incapacitate him for driving, and an accident occurred by which plaintiff was injured, the defendants are liable for the injury, no matter who was driving. It is not the law that a sober passenger is compelled to drive a stage-coach for a drunken driver, and then take all the perils of the trip."

· The sixth instruction asked by defendant read as follows: "You are instructed that no mere probability that the plaintiff's injuries were caused by the upsetting of defendants' stage will justify you in giving him a verdict." The court added: "But if you are satisfied, from the evidence, that the plaintiff did receive such injuries, then you are justified in taking such injuries into consideration in making up your verdict."

Dr. Owen, a witness upon the part of the defendant, in giving evidence as to whether the disease of plaintiff's lungs arose from natural causes or from external wounds, testified as follows: "I am a physician and surgeon; a regular graduate of a medical college; have been engaged in such practice over thirty years. I have examined the plaintiff several times; he is suffering from inflammation of the left lung, and the right lung is slightly affected. I have heard most of the evidence in this case; from all the evidence I have heard, and I heard all of Schafer's and most of Rockman's, from my examination of plaintiff, and also judging from my medical experience, I consider that the disease from which plaintiff is now suffering was produced by pneumonia, and that the pneumonia was produced by natural causes. I find the lungs diseased, the respiratory murmur is enfeebled; I noticed a marked change in the lungs on different examinations; I think that the dullness of sound was caused by the thickening or consolidation of the lung; I should think, on

account of the number of cases, that the pneumonia arose from natural causes; I should think the chances are largely in favor of *idiopathic* causes; I do not deny that it might have arisen from *traumatic* causes. It might be twelve, twenty-four or forty-eight hours before a man would complain, or rather when pneumonia would set in when arising from *traumatic* causes. The pain would result immediately. If a person had taken baths for a number of days at warm springs such as those at Cherry Creek are described to be by witnesses in this case, such baths would weaken the system and open the pores of the skin; then if a person should take a tiresome trip on a stage such as that from Cherry Creek to Ward is known to be, and that also in cold weather, the condition of the person when starting on the trip, the fatigue of the trip and the inhalation of cold air, would be much more likely to produce pneumonia than such injuries plaintiff claims to have received from the overthrowing of the stage would be to produce such disease. Surface wounds must be very severe to produce pneumonia. It is very seldom that pneumonia is produced by other than natural causes. In all my practice I have never seen a well-defined case of pneumonia arising from other than natural causes; the fact that plaintiff has been suffering from rheumatic diseases, been taking baths in the warm springs and riding long distances in cold weather, are sufficient of themselves to account for the disease of plaintiff. In my judgment, the disease of plaintiff is clearly traceable to natural causes, and not to external wounds. I have never yet seen a case of pneumonia arising from external wounds."

Dr. Chamblin and Dr. Bishop testified on behalf of defendant to the same effect.

Dr. Rockman, on behalf of plaintiff, testified as follows: "I am a practicing physician and surgeon; have been for at least sixteen years in average practice; I belong to the allopathic or old school; I have been educated in Europe and America; I know the plaintiff; first knew him in the latter part of December last year; he called upon me for treatment; he complained of his side and back, which he claimed had been hurt from an injury caused by the up-

setting of a stage; I gave him a *hyperdermic* injection, thinking his muscles were affected; the next day he came again and complained of great pain, and I gave him another injection; he came again in the evening, and I gave him another; the third day he had a severe attack of hiccough, so severe that I had to give him chloroform to stop it; I then told him to go home, that I would be around to examine him; he was very weak, and slept on the sofa in my office for the space of four or five hours that day; on the next morning I went to visit him, and made an examination of his lungs, and found that he had inflammation of the lungs, and I treated him for that; inflammation developed in the usual way until the sixth or seventh day after I first treated him, and then he expectorated a gangrenous mass, with clotted blood, decomposed; he had gangrene of the left lung; I treated him for about a month, and then advised him to go to San Francisco; when I examined him he had several bruises on the back and chest; there are different causes which produce inflammation of the lungs; any injury, if severe enough, will produce pneumonia; from his statement to me of his having received an injury, I took it that the inflammation of the lungs arose from that cause; the clotted blood showed that it had been some time in the lung; he coughed at the time he expectorated the blood; the extraneous matter in the lung caused the coughing; he continued expectorating blood pretty much every day, at first, a good deal, and after a little while it ceased somewhat; I have examined him lately; his left lung is consolidated, and there is a small cavity between the second and fourth ribs; he spits blood now; some of the blood was black, of a rusty color, and some fresh blood; the right lung was somewhat affected; now I think there is a *pleuretic* effusion of the right lung; at the time I treated him first, the left lung alone was affected; I think the *pleuretic* effusion of the right lung has been caused by the inflammation of the left lung, through sympathy; as soon as the blood exudes from the lungs it coagulates; hemorrhage often arises from various causes; the left lung is pretty well condensed, but it performs some slight functions yet." The conclusion of his testimony is stated in the opinion.

*A. M. Hillhouse,* for Appellant.

I. A plaintiff must plead and prove that he was at the time of the alleged accident without fault. (*Button* v. *Hudson River R. R. Co.*, 18 N. Y. 248; *Butterfield* v. *Forester*, 11 East. 60; *Lynch* v. *Nurdin*, 1 Ad. & El. 35; *Clayards* v. *Dethick*, 12 Id. 439 and 447; *Gough* v. *Bryan*, 2 Mees. & Wel. 773; *Bridge* v. *Grand Junction R. R. Co.*, 3 Mees. & Wel. 247–8; *Martin* v. *G. N. R. Co.*, 30 Eng. Law and Eq. R. 473; *Rathbun* v. *Payne*, 19 Wend. 399; *Bush* v. *Brainard*, 1 Cow. 78; *Hartfield* v. *Roper*, 21 Wend. 615; *Adams* v. *Carlile*, 21 Pick. 146; *Gahagan* v. *B. & L. R. Co.*, 1 Allen, 187.)

II. Plaintiff's instructions Nos. 1, 3, 4, 5 and 7 each say that: "If plaintiff was injured through the carelessness, etc., of defendants or their driver, that plaintiff must recover." The question of contributory negligence is in each instruction absolutely ignored. This was erroneous. (*Wilds* v. *Hudson River R. R.*, 24 N. Y. 430; *Spencer* v. *U. & S. R. Co.*, 5 Barb. 337; *Fox* v. *Town of Glastenburg*, 29 Conn. 209; *Murphy* v. *Deane*, 101 Mass. 455; Sherman & Redfield on Negligence, 28, and cases cited.)

III. Plaintiff's instruction No. 8 not only ignores all questions of contributory negligence, but assumes as a fact that plaintiff was compelled to drive. It tells the jury that if an accident occurred while defendant's driver was drunk, that independent of everything else entitles plaintiff to recover. This instruction is entirely erroneous.

IV. If a passenger upon a stage-coach takes the lines and drives the team for a drunken driver, that is contributory negligence. As soon as a passenger takes the reins and assumes to drive for the carrier he becomes a servant of the carrier, and is subject to all the rules of law applicable to cases when a servant in the employ of his master receives an injury. (Wood's Law of Master and Servant, 678, 997; *Degg* v. *Midland R.*, 1 Hurlstone & Norman, 773; *Potter* v. *Faulkner*, 3 L. J. Q. B. 30 Exch., 5 L. T. 455; *Warburton* v. *The Great Western R.*, L. R. 2 Exch. 30–36, L. J. Ex. 9; S. & R. on Negligence, 109.

V. The court erred in refusing to give the sixth instruction as asked by defendant, and in modifying the same so as to destroy its force and effect as a correct principle of law. (*Gerhauser* v. *N. B. & M. Ins. Co.*, 6 Nev. 15; *Underhill* v. *N. Y. & H. R. R. Co.*, 21 Barb. 489; *Gale* v. *Wells*, 12 Barb. 84.)

VI. The court erred in its oral charge to the jury. The jury was sworn to try only the issues made in the present action, not to pass upon questions of perjury. A jury should always be instructed to reconcile all the testimony, if possible, that no one will be by their verdict accused of perjury. This charge was not only calculated to, but evidently did, induce the jury to give a larger sum than without it would have been given; caused a prejudice against the defendants in the minds of the jurymen which induced a verdict. A jury is always liable to be influenced by the views of the presiding judge. (*Fay* v. *Grimstead*, 1 Barb. 321; *Bathune* v. *McCrary*, 8 Geo. 114; *Crossman* v. *Harison*, 4 N. Y. 39; Graham & Waterman on New Trials, head "misdirection of judge" in charging irrelevant matters.)

VII. The verdict of the jury is excessive. The injuries from which plaintiff was suffering came from natural causes.

*W. W. Bishop*, also for Appellant.

*George W. Baker* and *John T. Baker*, for Respondent.

I. Contributory negligence is a matter of defense. It not be alleged by the plaintiff. (Sherman & Redfield on Negligence, sec. 44; *Robinson* v. *The Western Pacific Railroad Co.*, 48 Cal. 409; *Railroad Company* v. *Gladmon*, 15 Wall. 401; *Knaresborough* v. *Belcher S. and M. Co.*, 3 Sawyer, 446; *Beatty* v. *Gilmore*, 16 Penna. Stat. 463; *Durant* v. *Palmer*, 29 N. J. Law Reports, 544; *May* v. *Hanson*, 5 Cal. 360; *Boyce v. Cal. Stage Co.*, 25 Cal. 460; *New Jersey Express Co.* v. *Jonathan Nichols*, 32 N. J. Law Reports, 166; *Johnson* v. *Hudson River R. R.*, 20 N. Y., 65; *Finn* v. *Vallejo St. Wharf Co.*, 7 Cal. 253; Redfield on Carriers, 281, Note 20.)

II. The acts of plaintiff did not constitute him a servant

of the defendant. (Shearman & Redfield on Negligence, 107; *May* v. *Hanson*, 5 Cal. 360.)

III. The court was authorized to modify the instructions. (*People* v. *Doge*, 30 Cal. 448.)

IV. A judgment will not be reversed on account of erroneous instructions to the jury.when it is apparent the verdict would have been the same with correct instructions. (*Green et al.* v. *Ophir Co.*, 45 Cal. 522; *Robinson* v. *Western Pacific R. R. Co.*, 48 Id. 409.) If all the instructions taken together present to the jury a correct statement of the law of the case courts will not interfere with the verdict, although some slight errors may have crept into one particular instruction. (34 Cal. 641; 22 Id. 42; 6 Nev. 109 and 244; 18 Cal. 376; 22 Id. 22; 38 Id. 362; 6 Nev. 265; 45 Cal. 522.)

V. The eighth instruction as to the duty of stage proprietors in employing skillful and competent drivers is correct; *Peck* v. *Neil*, 3 McLean, 22; *Stokes* v. *Saltonstall*, 13 Peters, 181; Angel on Carriers, sec. 540; 13 Cal. 599; 15 Wallace, 401; Angel on Carriers, 541; Note, same, 547; Sherman & Redfield on Negligence, sec. 594; Redfield on Carriers, secs. 340 and 341; 3 Sawyer, 446; *Boise* v. *Anderson*, 2 Peters, 150; *Fuller* v. *Naugatuck R.*, 21 Conn. 557.

By the Court, HAWLEY, C. J.:

This is an action brought by the plaintiff to recover the sum of ten thousand dollars damages, for injuries alleged to have been received by him while a passenger on the defendants' stage-coach in traveling from Cherry Creek to Robinson, in White Pine County.

Plaintiff recovered a judgment for five thousand dollars, from which, and from an order of the court overruling a motion for a new trial, the defendants appeal.

Appellants, upon the trial of the cause, relied upon three separate and distinct defenses: 1. That the stage did not upset; 2. That if it did upset, plaintiff was not injured; 3. That if it did upset, and if plaintiff was injured, he was guilty of contributory negligence, and was (if driving) at the time of the accident a servant of the defendants.

1. Most of the objections by appellants are based upon the ground that the court in giving instructions to the jury ignored "all question of contributory negligence."

It is a well settled principle of law that the instructions given must be considered with reference to the pleadings and the evidence. In this case the question of contributory negligence is not raised in the pleadings, and no testimony was offered that would authorize its consideration by the jury. In fact, there is no evidence to sustain the third defense relied upon by appellants' counsel.

The plaintiff Schafer was the only passenger on the stage-coach at the time of the alleged accident, and he and the driver were the only persons present when it occurred. Wadleigh, the driver of the coach, was intoxicated. Schafer testified that about five miles out from Cherry Creek the driver went to sleep; that he then took the lines and drove the team until the driver woke up; that Wadleigh, after waking up, took the lines out of his hands and commenced whipping the horses; that the horses commenced running; that one of the lines, to quote the language of the witness, "dropped on the ground, caught on the wheel, jerked the horses out from the road on the off side; I hollered 'whoa' to stop the horses, and they checked up a good deal. Wadleigh was pulling on one line and I told him not to pull too hard or he would upset sure. * * * The ground was slanting to the nigh side, and the stage ran into a little gully, and Wadleigh pulling on the nigh line caused the stage to cramp when it struck the gully, and it upset. I was sitting on the nigh side. I fell on the left side, on a rock. Wadleigh fell on top of my breast."

The only pretense that plaintiff was guilty of contributory negligence is based upon the imaginary idea that he might have been driving the team at the time of the accident.

It is true that the witness Wadleigh told some parties that he had no recollection of the stage upsetting, "but if it did upset Schafer was driving," and he testified upon the trial that Schafer told him after he woke up that they had had a tip over but that nobody was hurt. If he had stopped

here there might have been some slight foundation upon which to submit the question to the jury whether or not respondent was driving at the time of the accident. But he further testified that he did not think it possible that the stage could have been upset without his knowing it. He admitted that he was driving at the place where Schafer testified the accident occurred, but denied that the stage upset at that or any other place. This denial was made without any qualification whatever. At the close of his testimony the court asked him this question: "Mr. Wadleigh, do I understand you to say the stage did not tip over on that day between Cherry Creek and Robinson?" Answer—"I swear positively that it did not."

In the face of this testimony it cannot be reasonably claimed that there was any evidence tending to show that plaintiff was guilty of contributory negligence.

2. The eighth instruction given by the court, if erroneous at all (under the facts and circumstances of this case), is only so because it authorized the jury to consider a false quantity by taking into consideration the question whether plaintiff was driving at the time of the accident.

From the conclusions already reached it is evident that the appellants could not have been prejudiced by the giving of this instruction.

The law compels stage proprietors to furnish prudent and skillful drivers, and holds them liable for any injury that a passenger may receive on account of any negligence in this particular. (*McKinney* v. *Neil,* 1 McLean, 540; *Stockton* v. *Frey,* 4 Gill, 406; *Farish & Co.* v. *Reigle,* 11 Grat. 697; *Sales* v. *Western Stage Co.,* 4 Iowa, 547; *Stokes* v. *Salstontall,* 13 Pet. 181; *Sawyer* v. *Dulaney,* 30 Tex. 479; Redfield on Carriers, sec. 340; Angell on Carriers, sec. 569.)

3. The court did not err in modifying the sixth instruction asked by defendants' counsel.

If it be true that no mere probability, that the plaintiff was injured by the upsetting of the stage, would justify the jury in finding a verdict in his favor; yet if the jury was satisfied from the evidence that plaintiff did receive the injuries complained of by the upsetting of defendants' coach,

through the negligence of the driver, then it was the duty of the jury to take into consideration the injuries thus received, in making up their verdict.

In other words it was the duty of the jury to determine the nature and extent of the injuries that plaintiff received by the upsetting of the coach, and they were authorized by this instruction, as modified, to consider "such injuries" in making up their verdict.

4. It is claimed that the court erred in giving an oral charge to the jury in the following words:   "This is an action wherein plaintiff sues defendants for ten thousand dollars for injuries alleged to have been occasioned by the upsetting of a stage-coach of defendants.   The plaintiff complains that his injuries resulted from the upsetting of defendants' stage.   Defendants claim that this stage never was upset.   Also, that the alleged injuries came from natural causes.

"In this case there is plain perjury on one side or the other.   Either the plaintiff, Henry Schafer, committed perjury or the witness Wadleigh, and one or the other of them ought to be in the penitentiary instead of being in this court-room."

This charge was given to the jury before any of the written instructions were read.   The objections urged by appellants' counsel are to that portion charging perjury.

It will be observed that there is no intimation from the court as to which party it deemed guilty of the offense.   It was left to the jury to determine the truth or falsity of the respective statements sworn to by the witnesses, Schafer and Wadleigh.   These witnesses had solemnly testified diametrically opposite.

In reply to the question asked by the court, "Did the stage tip over that day, between Robinson and Cherry Creek?" Wadleigh answered: "I swear positively that it did not;" Schafer answered: "Yes, sir; I am positive it did."   The court, in charging the jurors that there was false swearing "on one side or the other," only told them what they already knew, or ought to have known.   Such remarks do not entitle a party to a new trial.   (*State* v. *Glovery*, 10

Nev. 24.)    Perhaps it would have been better for the court to have withheld its opinion that either Schafer or Wadleigh ought to be in the penitentiary.   But it is apparent that the remarks of the court were only intended, and could only have been understood by the jury, as placing the seal of its condemnation upon the crime of false swearing, and to impress upon the minds of the jurors that it was their duty to determine which one of the witnesses had sworn falsely. .

5. The jury, in awarding damages to the extent of five thousand dollars, must necessarily have found as a fact that the injuries from which plaintiff was suffering were produced by the accident, and did not come from natural causes.   Upon this point there is a substantial conflict in the evidence.   We are of the opinion that there is sufficient testimony to sustain the verdict of the jury.

Dr. Rockman, the physician called to attend plaintiff shortly after the accident occurred, after giving a detailed statement of plaintiff's injuries, concludes his testimony as follows:   ·

"From the examination of the plaintiff I consider that he has a very poor chance for recovery.   I do not think he can ever perform manual labor.   From an examination of plaintiff's lungs at the present time, it is impossible for any physician to diagnose the disease so as to tell exactly the origin of it; that is, whether the present injured state of the lungs arose from *traumatic* or *idiopathic* causes; but, from my knowledge of his case from the start, and from the examination made at the commencement of his sickness, the development of the disease then, and from the examinations recently made and the present development of the disease, in my opinion there is no doubt but the injuries to plaintiff's lungs arose from *traumatic* causes; that is, from some injury received, and that it is not *thesis* or natural consumption."

If the jury believed these conclusions to be correct, and that plaintiff received the injuries by the negligent upsetting of defendants' coach, the amount of the verdict is not excessive.

The judgment of the district court is affirmed.