SOUTHERN PAC. CO. v. RAUH.

*(Circuit Court of Appeals, Ninth Circuit. March 7, 1892.)*

1. JURORS—CHALLENGES—EXAMINATION—REVIEW—RECORD.
    Under Code Civil Proc. Or. § 187, providing that an opinion already formed by a juror is not alone sufficient to sustain a challenge, but that the court must be satisfied from all the circumstances that the juror cannot try the case impartially, the ruling of the court on the juror's qualifications will not be reviewed unless all of the evidence taken at the examination be presented in the record, although the testimony produced shows the juror to have a fixed opinion on the merits of the cause. *State* v. *Tom,* 8 Or. 179, followed.

2. SAME—CHALLENGES.
    Under Code Civil Proc. Or. § 231, providing that the point of exception to a juror must be particularly stated, it is not sufficient to challenge for cause without stating the particular reasons for such challenge.

3. SAME—REVIEW.
    The discretionary finding of the trial judge in passing upon a juror's qualifications will not be reviewed unless it appears to have been exercised arbitrarily.

4. SAME—EXCEPTIONS.
    Rejection, by the court, of a challenged juror for insufficient reasons, is no ground for exception when it appears that the remainder of the jury was made up of persons to whom the excepting party made no objection.

5. SAME—REVIEW.
    To base error upon the court's ruling that a juror need not answer as to his prejudice against corporations, it must appear that the party making the challenge was thereby prevented from ascertaining whether the juror had such prejudice as would interfere with his conclusions in arriving at a verdict.

6. PERSONAL INJURIES—EVIDENCE AS TO FAMILY.
    In an action for personal injuries it appeared that plaintiff had no external hurt except a slight bruise, but that he had been in bed ever since the accident,—a period of several months. Evidence was admitted without objection that he had a wife and home. *Held* proper to admit further evidence that he had two children, of seven and five years respectively, not for the purpose of increasing the damages, but as explaining why the members of his family were not called to testify as to his condition during that time, and as tending to show that he was not shamming illness.

7. SAME—MEDICAL EXPERTS—VERDICT.
    In a damage suit for personal injuries, where the evidence points to some internal hurt, manifesting itself in symptoms of hysteria, the medical testimony being conflicting, an instruction that the testimony of defendant's witnesses, who had had experience in similar cases, was entitled to the greater weight, is not necessarily disregarded in a verdict for plaintiff, where the latter had produced other testimony tending to show the serious nature of his injuries.

8. SAME—EXCESSIVE VERDICT.
    A verdict for $10,000 for personal injuries to an adult is not excessive where the testimony of the attending physician, corroborated by that of another medical ex-

port, was that plaintiff could not regain his health, and other evidence tended to show the serious nature of the injuries, even though physicians called by defendant testified that plaintiff ought to recover soon.

Error to the Circuit Court of the United States for the District of Oregon.

At Law. Action by John B. Rauh against the Southern Pacific Company for damages for personal injuries. Judgment for plaintiff. Affirmed.

*W. C. Belcher*, for plaintiff in error.

*Doolittle, Pritchard, Stevens & Grosscup* and *Cox, Teal & Minor*, for defendant in error.

Before HANFORD, HAWLEY, and MORROW, District Judges.

MORROW, District Judge. This was an action by John B. Rauh, the plaintiff in the court below, (the defendant in error here,) against the Southern Pacific Company, to recover damages for personal injuries received by him while traveling as a passenger on a train belonging to the company between Portland, Or., and Albany, in that state. While the train was in motion, a bridge over which it was passing gave way. The bridge was at a point on the road known as "Lake Labish," in Oregon. The plaintiff, at the time of the disaster, was sitting in a car which became involved in the wreck, and in falling and colliding with other cars raised the plaintiff from his seat, and immediately threw him back and against the side of the car with such force that he was bruised on the side of his head, and injured in his side and back. The case was tried before a jury, and the plaintiff had a verdict and judgment for $10,000 and costs. The company sued out this writ of error. For the reversal of the judgment errors of the court are assigned relating to the impaneling of the jury, the admission of evidence, and the verdict of the jury.

1. *The Examination of Jurors.* In the selection of the jury 23 persons were called and examined as to their qualifications to sit as jurors in the case. Plaintiff and defendant were each entitled to three peremptory challenges. Two of the persons called were challenged peremptorily by the plaintiff, and three by the defendant. Three were challenged by the plaintiff for cause, and, the challenges being sustained by the court, the defendant excepted. Two were challenged for cause, but by whom is not disclosed by the record. The challenges were, however, sustained without exception. One juror was excused by the court on account of bodily infirmity. To the remaining 12 persons who were accepted and finally sworn as jurors to try the case, the defendant interposed two challenges for cause, which were disallowed, and defendant excepted. To three others defendant propounded certain questions, which the court stated the jurors need not answer, the defendant excepting to the rulings of the court in that behalf. The same proceedings occurred in the examination of another juror, but the ruling of the court is not assigned as error, and will therefore be considered as waived. The other six jurors were examined and accepted without objection. Section 800 of the Revised Statutes of the United States provides that jurors to serve in the courts of the United States, in each state respectively, shall have the

same qualifications as jurors of the highest courts of law of such state at the time when such jurors for service in the courts of the United States are summoned. We must therefore look to the law of the state of Oregon to determine the qualifications of the jurors in this case. The Code of Civil Procedure of that state, regulating the method of forming juries, provides as follows:

"Sec. 183. A challenge for cause is an objection to a juror, and may be either (1) general; that the juror is disqualified from serving in any action; or (2) particular; that he is disqualified from serving in the action on trial. * * *"

"Sec. 185. Particular causes of challenge are of two kinds: * * * (2) For the existence of a state of mind on the part of the juror, in reference to the action, or to either party, which satisfies the trier, in the exercise of a sound discretion, that he cannot try the issue impartially, and without prejudice to the substantial rights of the party challenging, and which is known in this Code as 'actual bias.' * * *"

"Sec. 187. A challenge for actual bias may be taken for the cause mentioned in the second subdivision of section 185. But on the trial of such challenge, although it should appear that the juror challenged has formed or expressed an opinion upon the merits of the cause from what he may have heard or read, such opinion shall not of itself be sufficient to sustain the challenge, but the court must be satisfied from all the circumstances that the juror cannot disregard such opinion, and try the issue impartially."

"Sec. 192. The challenge may be excepted to by the adverse party for insufficiency, and, if so, the court shall determine the sufficiency thereof, assuming the facts alleged therein to be true. The challenge may be denied by the adverse party, and, if so, the court shall try the issue and determine the law and the fact.

"Sec. 193. Upon the trial of a challenge the rules of evidence applicable to testimony offered upon the trial of an ordinary issue of fact shall govern. The juror challenged, or any other person, otherwise competent, may be examined as a witness by either party. If a challenge be determined to be sufficient, or found to be true, as the case may be, it shall be allowed, and the juror to whom it was taken excluded; but, if determined or found otherwise, it shall be disallowed."

"Sec. 230. An exception is an objection at the trial to a decision upon matter of law, whether such trial be by jury or court, and whether the decision be made during the formation of a jury or in the admission of evidence, or in the charge to the jury, or at any other time from the calling of the action for trial to the rendering of the verdict or decision. But no exception shall be regarded on a motion for a new trial, or on an appeal, unless the exception be material, and affect the substantial rights of the parties.

"Sec. 231. The point of the exception shall be particularly stated. * * *"

Eight of the errors assigned relate to the formation of the jury under the provisions of the Code just cited. Three of these have reference to the examination and qualifications of three persons,—Craybill, O'Connor, and Holman,—who were called and examined, but not accepted as jurors; and the other five have reference to the examination and qualifications of five persons,—Griffin, Bacon, Cimino, Foster, and Richardson,—who were called and examined and accepted as jurors to try the case.

*The Examination of Persons who were not Accepted as Jurors.* We will first consider the exceptions taken in the examination of those persons who were excluded from the jury. The second person called to the jury-

box was a Mr. Craybill, who, being examined on his *voir dire* as to his qualifications to sit as a juror in the case, was asked by counsel for defendant, "among other questions," the following:

"*Question.* Have you read or heard or talked about the accident that occurred at Lake Labish? *Answer.* I have. *Q.* Have you conversed with any one who claimed to have been at the wreck and examined it, or stated anything about the facts and circumstances connected with it? *A.* I believe I had a short talk with Mr. Faul, one of the railroad commissioners, after he made the examination. I am not positive whether it was with him or with his partner; one or the other. *Q.* Did the party who talked with you claim to state to you what was the cause of the wreck as he understood it? *A.* No, I do not think he did. The talk was the situation of the wreck after it occurred. *Q.* Now, from what you read in the newspaper, and this conversation or any other conversation you might have had or heard, have you formed or expressed at any time an opinion as to the cause of this wreck, or the liability of the railroad company for it? *A.* I do not know that I ever expressed an opinion; possibly I have. But it is quite natural for me, and, I suppose any one else, to form an opinion or draw some conclusion when they read an article, and especially in a case of this kind. *Q.* Then you have formed some opinion? *A.* I think so; yes. *Q.* Have you that opinion now? *A.* Yes, to a certain extent. *Q.* Is that such an opinion as would require evidence to remove it? (The court stated that the juror need not answer that question, and the juror did not answer the same; to which ruling and action of the court counsel for the defendant excepted. Counsel for defendant proceeded with the examination as follows:) *Q.* Is that a fixed opinion? *A.* Well, it is an opinion that would certainly take evidence to remove it. *Q.* Then you think it is a fixed opinion at the present? *A.* Yes, I think so. (Counsel for the defendant submitted a challenge to the juror for cause. Counsel for plaintiff cross-examined the juror as follows:) *Q.* What was the nature of the reports you read, from which you drew this opinion? *A.* Well, I read the reports that were published in the Oregonian and other papers, and I also read the report of the railroad commission. I read it pretty carefully. *Q.* Did you read the entire report? *A.* I think I did. *Q.* Did you place credence in the report of the facts? *A.* I certainly placed credence in the report. *Q.* And from that you formed your opinion? *A.* Yes, sir."

The court overruled the defendant's challenge for cause, to which ruling of the court the defendant excepted. Defendant challenged said Craybill peremptorily, and thereby exhausted one of his three peremptory challenges allowed by law.

As to the first exception, it is sufficient to say that the question that was asked and ruled out by the court was subsequently answered by Craybill in response to further interrogatories propounded by defendant's counsel; and the challenge for cause, which was denied by the court, and is made the ground of the second exception, is based upon that answer. There is, therefore, nothing remaining of the first exception upon which to base a claim of error. The challenge for cause is predicated upon the statement of Craybill that he thought he had a fixed opinion, but the record does not contain the whole of the examination of this juror. The examination, as set forth in the bill of exceptions, is qualified by the introductory statement that, "among other questions," he was asked those reported in the record. In the absence of a record containing all the evidence taken upon the trial of the challenge, we can-

not say that the court, in the exercise of a sound discretion, and from all the circumstances, was in error in determining that the juror could disregard whatever opinion he may have had, and try the issue impartially, and without prejudice to the substantial rights of the defendant. In the case of *State* v. *Tom*, 8 Or. 179, the supreme court of that state affirmed the decision of the lower court in overruling challenges to certain jurors, where their qualifications, as appears from the records, were as doubtful as in the case under consideration. The jurors in that case stated that they had formed opinions as to the guilt or innocence of the prisoner; that they thought their opinions were fixed opinions, and that it would take evidence to remove them; but it did not appear from the bill of exceptions that all the evidence taken in the examination of the jurors had been reported to the supreme court. The court said:

"As to whether the juror was impartial or not was a question to be tried by the court from the evidence before him. Before we can judge whether the discretion exercised by him in overruling the challenge was a sound discretion, and properly exercised in this case, we must have all the evidence before us in this court that was adduced on the trial of the challenge in the circuit court."

To the same effect is *State* v. *Brown*, 7 Or. 186; *Hayden* v. *Long*, 8 Or. 244; *State* v. *Saunders*, 14 Or. 300, 12 Pac. Rep. 441. This construction of the statute by the supreme court of Oregon is binding on this court.

There is still another reason why the ruling of the court upon the challenge to the juror cannot be disturbed. The challenge was for cause, but without further statement or explanation as to the particular ground of the challenge. This is not sufficient. The ground of the challenge must be specifically stated. This is the requirement of section 231 of the Oregon Code of Civil Procedure, providing that "the point of the exception shall be particularly stated." But it may be said that the examination had already disclosed the ground of the challenge. The juror had said that he thought he had a fixed opinion, and this was manifestly the particular cause from which a bias was to be inferred. The answer to such a suggestion is that the inquiry in reviewing such proceedings on appeal is not so much as to the character of particular statements made by the juror concerning his opinions in relation to the merits of the cause as it is to determine whether the court exercised a sound discretion in concluding from all the circumstances that the juror could try the issue impartially, and without prejudice to the substantial rights of the parties. This inquiry must therefore include the consideration of all the facts involved in the juror's qualifications that can be made a matter of record; and even then such a record may be imperfect, since the court, in passing upon the question, is to consider the appearance of the person called as a juror, his manner, tone, and character, as exhibited under examination, and all the peculiarities and circumstances that tend to establish the presence or absence of the qualifications of a fair and impartial juror. It has therefore been held that the findings of the court upon the qualifications of jurors will not be reviewed unless it

clearly appears that the court has exercised its discretion **arbitrarily.** *State* v. *Tom*, 8 Or. 177; *State* v. *Saunders*, 14 Or. 300, 12 Pac. Rep. 441. In *Freeman* v. *People*, 4 Denio, 9, the court said:

"When a juror is challenged for principal cause or for favor, the ground of challenge should be distinctly stated, for without this the challenge is incompetent, and may be wholly disregarded by the court."

In *Mann* v. *Glover*, 14 N. J. Law, 195, it is declared to be the duty of the challenger to—

"State why the juror does not stand indifferent. He must state some facts or circumstances which, if true, will show either that the juror is positively and legally disqualified, or create a probability or suspicion that he is not or may not be impartial."

In *Paige* v. *O'Neal*, 12 Cal. 492, the court said:

"It is not sufficient to say, 'I challenge the juror for cause,' and then stop, as in the present case. The ground upon which it can be sustained, if at all, must be also stated."

In *People* v. *Reynolds*, 16 Cal. 130, the court defined an insufficient challenge with still more precision. The court said:

"It is not enough to say, 'I challenge the juror for implied bias,' and then stop. The particular cause from which such bias is to be inferred must be stated."

The law upon this point is well established by authority. *People* v. *Hardin*, 37 Cal. 259; *People* v. *Dick*, Id. 279; *People* v. *Renfrow*, 41 Cal. 37; *People* v. *McGungill*, Id. 429; *People* v. *Walsh*, 43 Cal. 447; *People* v. *Buckley*, 49 Cal. 241; *People* v. *Cochran*, 61 Cal. 548; *State* v. *Squaires*, 2 Nev. 226; *Estes* v. *Richardson*, 6 Nev. 128; *State* v. *Chapman*, Id. 320; *State* v. *Raymond*, 11 Nev. 98; *State* v. *Knight*, 43 Me. 11; *Powers* v. *Presgroves*, 38 Miss. 227; *State* v. *Dove*, 10 Ired. 469; *Bonney* v. *Cocke*, 61 Iowa, 303, 16 N. W. Rep. 139; *State* v. *Munchrath*, 78 Iowa, 268, 43 N. W. Rep. 211.

The fourteenth person called to the jury-box was Thomas O'Connor, who, after examination as to having taxable property, was challenged by plaintiff for cause, and the challenge denied by defendant. The court sustained plaintiff's challenge. It is assigned as error that this challenge was made by defendant, and assumes that the juror remained on the panel; but the juror was in fact excluded, and the assignment need not, therefore, be further considered.

The fifteenth person called to the jury-box was Herbert Holman, who, on examination, testified that he was a steam-boat man, running with the Kellogg Transportation Company. He was thereupon accepted by the defendant; but, on further examination by plaintiff's counsel, the juror testified that he was a stockholder in the company, and that the company had a general traffic arrangement with the Southern Pacific Company. Plaintiff thereupon challenged the juror for cause, on the ground that the company in which the juror was a stockholder had such relations with the Southern Pacific Company as to remove him from the position of a perfectly unbiased juror. The court sustained the challenge, and defendant excepted. The claim that this challenge should

have been denied involves not only the determination that the juror was qualified, but that the defendant was entitled to have him remain on the panel. At this time seven jurors had been accepted and sworn to try the case. After Holman had been rejected, the panel was completed by the selection of five jurors, to whom no objection was offered, or even suggested, by the defendant. The allowance of this challenge did not, therefore, result in any prejudice to defendant's interests, since a competent and unbiased juror was selected in the place of the one excluded. In the case of *Railroad Co.* v. *Herbert*, 116 U. S. 646, 6 Sup. Ct. Rep. 590, the relations of a juror to the defendant were very much of the same character as the relations of the juror Holman to the defendant in this case. In the case cited the juror was a lumber dealer, and the company gave him a place on its right of way for a lumber-yard, without rent. He had also heard the accident to the plaintiff spoken of or explained. It was not shown, however, that he had any actual bias for or against either party, or any belief of opinion touching the merits of the case. He was, nevertheless, challenged, but it did not appear whether the challenge was for cause or was peremptory. The supreme court, in passing upon the question, said:

"It is for the party asserting error to show it. It will not be assumed. But, if we regard the challenge as for cause, its allowance did not prejudice the company. A competent and unbiased juror was selected and sworn, and the company had, therefore, a trial by an impartial jury, which was all it could demand."

Thompson, in his work on Trials, § 120, states the law as follows:

"As already pointed out, the right *to reject* is not a right *to select*. No party can acquire a vested right to have a particular member of the panel sit upon the trial of his cause until he has been accepted and sworn. It is enough that it appear that his cause has been tried by an impartial jury. It is no ground for exception that, against his objection, a juror was rejected by the court upon insufficient grounds, unless, through rejecting qualified persons, the necessity of accepting others, not qualified, has been purposely created."

*The Examination and Qualification of Jurors Accepted and Sworn to Try the Case.* Having disposed of the exceptions relating to the qualifications of persons called, examined, and excluded from the jury, we will now proceed to consider the qualifications of those persons who were examined, accepted, and sworn to try the case. The first person called to the jury-box was Robert Griffin. His examination, as it appears in the record, contains the introductory statement that, " among other questions," he was asked the following by counsel for defendant:

"*Question.* Have you any such bias or prejudice against corporations, as such, or railroad companies, as would interfere with your conclusion in finding a verdict in a cause in which such corporation or company was a party? (The court stated that the juror need not answer the question, and the juror did not answer the same; to which ruling and action of the court counsel for the defendant excepted. Thereupon the counsel for the defendant submitted a challenge for cause. The court overruled the challenge, to which ruling of the court the defendant excepted. Thereupon the said person was taken as a juror.)"

In determining whether the court was justified, under the circumstances, in stating to the juror that he need not answer the question as to his bias or prejudice against corporations or railroads, we are met, at the outset, with the difficulty that the whole of the examination is not reported in the record. It may be that this feature of the examination had been covered by other questions, or that the court deemed the scope of the question too general, and that the examination of Griffin, like that of any other witness, should have been directed to the discovery of facts from which the court might determine whether he was qualified to serve as a juror in the case or not. But, in any view, the record is not sufficient to enable this court to pass upon the exception. To base an error upon such instruction as was given to the juror in this case it should appear that by reason of it the defendant was prevented from ascertaining whether the juror has such bias or prejudice against corporations or railroads as would interfere with his conclusions in arriving at a verdict in the case on trial. The challenge for cause, which might have furnished information upon the point, is also defective. The ground of the challenge is not specifically stated. Whatever objections the defendant may have had to this juror, they are not disclosed in the record. In *Ford* v. *Umatilla Co.*, 15 Or. 313, 16 Pac. Rep. 33, the plaintiff brought an action against the defendant to recover damages for injury to certain personal property. Plaintiff alleged that he was traveling through said Umatilla county, transporting a quantity of household goods and stock cattle and horses, and that, while his team of four horses and a wagon with a load of household goods, merchandise, and library were being driven over and across the county bridge over Butter creek, in said county, the bridge broke and fell, precipitating the team of horses and wagon, and load of goods, merchandise, and library, into the creek. Two of the horses were killed, and the other two horses, the wagon, household goods, merchandise, and library were badly damaged. In impaneling the jury to try the case, one R. Sargeant, a juror, was asked by counsel for the defendant if there was any prejudice or ill feeling then existing in his mind against the county court of Umatilla county; also if there was any such prejudice or ill feeling growing out of the transaction in question; which several questions were objected to by the plaintiff's counsel, and the objections severally sustained by the court, and exceptions were taken to the rulings. On appeal, the supreme court said:

"The question put by the appellant's counsel to the juror R. Sargeant, as to whether there was any prejudice existing in his mind against the county court of Umatilla county, and whether there was any such prejudice or ill feeling growing out of the transaction then before the court, were proper questions, under a practice that has been permitted in trial courts in this state, though we are not aware of its being authorized by statute. Questions of that character are asked in order to ascertain whether or not any grounds of challenge exist. But, being a mere question of practice that has been permitted by sufferance of the trial courts, this court will not undertake to enforce it. The appellant's remedies, where the court refused to allow the said questions to be asked the juror, was to have submitted a challenge to the

juror for actual bias, and specified the grounds upon which it was taken. Then, if the respondent's counsel had excepted to the challenge, and the circuit court determined that it was insufficient, the decision thereon could have been reviewed by this court. Title 2 of chapter 2 of the Civil Code prescribes the mode of procedure in such cases, but, as the matter now stands, this court cannot consider it."

The fourth person called to the jury-box was C. P. Bacon, who, among other questions, was asked the following by counsel for defendant:

"*Question.* Have you heard or read anything in regard to the supposed cause of the wreck, or anything in regard to whether the railroad company, in your judgment, should be held liable or not for the wreck? *Answer.* I have. *Q.* Where did you obtain that information? *A.* From reading the newspapers. *Q.* From what you read, did you form or express any opinion as to the liability of the company or otherwise? *A.* I have; both. *Q.* Is that a fixed opinion? *A.* It is. (Thereupon the counsel for the defendant submitted a challenge for cause to the juror, and the court overruled the challenge, and the defendant excepted.)"

What we have said respecting the insufficiency of the record in not containing all the evidence taken upon the trial of the challenge and the failure to state the grounds of the challenge for cause disposes of the objection to this juror.

The fifth juror called to the jury-box was V. Cimino, who, "among other questions," was asked the following by counsel for defendant:

"*Question.* Do you think you would be governed by the evidence that would be given in this case, and the law as given you by the court, without regard to anything you may have read or heard about? (Thereupon the court stated that the juror need not answer the question, and the juror did not answer the same. To which ruling defendant excepted.)"

There was no challenge for cause. The whole of the examination of the juror is not here, and the assignment of error rests entirely upon the statement of the court to the juror that he need not answer the question. This, as we have seen, is not sufficient to bring the ruling of the court before us for review.

The sixth juror called, H. P. Foster, and the eighth juror called, D. C. Richardson, were asked questions by counsel for defendant which the court stated the jurors need not answer. Challenges for cause were not interposed, and, for the reasons already stated, we cannot, on the record before us, review the rulings of the court with respect to the errors assigned in the examination of these jurors.

2. *Admission of Testimony.* Upon the trial of this case the deposition of plaintiff was read to the jury. He testified that he resided at Tacoma, in the state of Washington, and was 29 years of age. In reply to interrogatories, he detailed the circumstances connected with the accident to the train on which he was traveling as a passenger, and described the injuries he received at the time. He gave an account of his return home, and, in reply to questions put to him by his counsel, he testified as follows:

"*Question.* What was then done with you? *Answer.* I tried to eat breakfast with my wife, but I could not eat, so I got to bed when the doctor came. * * * *Q.* On what day, if you remember,—on what day of the month,—did

you arrive home after your hurt? *A.* I reached home on the 14th of November, 1890, at about 6:30 or 7 o'clock in the morning. *Q.* Where have you been since the time you have last mentioned? *A.* From that day up to this time I never left this bed. * * * *Q.* You may now state what family you have. (Objected to by counsel for defendant as immaterial. The court ruled upon this objection as follows: 'I think this may be admitted for this reason: Of course, it cannot be admitted to affect the question of damages sought to be recovered. But we will take some notice of human nature, and its tendencies, the affection of men and women; and I think it may be assumed that a father and husband, ordinarily, if his family needs his services to support their lives, would naturally give it to them if he could. It does not always follow that he will, because we know that there are a great many men who do not; but we may assume that to be the rule. If this man remained in bed a certain length of time, or all the time, since this accident occurred, I think the fact that he has a family dependent upon him, and no resources, might go to the jury for what it is worth, to say whether he is shamming or not.') *A.* I have a wife and two children. *Q.* How old is the oldest? *A.* Seven years, the one; and five, the other."

Defendant allowed an exception, and the ruling of the court is assigned as error. It is contended, in support of this ruling, that it was based upon the authority of *Caldwell* v. *Murphy*, 11 N. Y. 416. In that case the plaintiff had been injured by the overturning of a stage or omnibus of the defendant's, in which plaintiff was a passenger. On appeal it was claimed as error that on the trial the plaintiff's counsel put this question to plaintiff: "Had he the means of support for himself and family except his labor?" It was objected to. The objection was overruled, and the defendant excepted. The witness answered: "He had no means of support except what he got from the charity of his friends." The judge then put some questions to ascertain the number of persons in the plaintiff's family, and in what manner they were supported after the injury; it having been shown that before that he had constant employment. The evidence was objected to, and an exception was taken to its admission. The court held the evidence admissible to show that the plaintiff's circumstances were such that he would probably have been engaged in laboring in his calling if he had not been disabled by his injuries, and that he was in a considerable degree unable to labor. The supreme court sustained the ruling of the lower court in admitting his testimony, and observed "that the evidence was not offered, as the argument suggests it to have been, to influence the amount of the recovery, under the notion that a poor man would be entitled to a measure of damages different from that which would belong to one in other circumstances." In the present case the plaintiff, without objection, had already disclosed the fact that he had a wife and home, and had been confined to his bed ever since his return from the accident,—a period of several months. He had been attended by three physicians, and examined by others. His symptoms pointed to some injury of the spine, but the precise nature of the hurt was not manifest. The extent and character of the injury were in issue in the case, and testimony concerning the evidence of physical disorder usually attendant upon real disability were material to that issue. His wife and other members of his

family, or such of them as were old enough to observe and describe the manifestations of disease in a sick person, were competent witnesses to such matters; and his wife was, in fact, subsequently placed on the stand, and gave testimony upon this feature of the case. She also stated, without objection, that they had two children. The testimony of the plaintiff that the oldest child was only seven years of age accounted for the fact that the two children were not produced as witnesses. In the case of *Pennsylvania Co.* v. *Roy*, 102 U. S. 460, it did not appear that testimony concerning plaintiff's family had any legitimate bearing upon any issue in the case, and its admission was held to have been error for that reason. We think that, under the circumstances of this case, the testimony was material and relevant, and did not have the effect of increasing the damages, but served rather to inform the jury as to plaintiff's real condition.

3. *The Verdict against the Instructions of the Court.* In charging the jury the judge gave the following instruction:

"The medical witnesses who have testified on behalf of the plaintiff, while expressing the opinion that he is a very sick man, all admit that they were unable to discover any positive present sign of injury to his person, or any symptom in his case other than what frequently attends hysteria, and say that they are unable to determine what is the matter with him; while the medical witnesses on the part of the company all say that the plaintiff's case is one of clearly defined traumatic hysteria, or a hysterical condition following an injury, which condition, under proper advice and treatment, should not have existed; that his real injury at the time of the wreck was only slight, and that his present apparent condition is unnecessary and unreal. No medical witness on part of the plaintiff claims to have had any previous experience in treating any apparently similar injury from a railroad accident, while two of defendant's medical witnesses testified to having had very considerable experience in such cases. If, therefore, you believe that these medical witnesses are all equally honest and equally capable in their professional qualifications, the testimony of those of them who have had experience in such cases is entitled to greater weight than is the testimony of those who have not had any such experience; and on arriving at your verdict you should be governed always by the better evidence."

It is assigned as error that the jury disregarded the foregoing instruction in finding their verdict against defendant and in favor of plaintiff for $10,000. It is contended that there was no evidence tending to show any injury to the plaintiff beyond a slight bruise, the inconvenience produced by the interruption of the journey, and the pain experienced at the time of the accident. The medical testimony shows that plaintiff had been under the constant care of a physician since the day of his arrival home after the accident. His regular physician had been absent for a time, but during such absence another physician was in attendance, and a third physician was called in once. The bills for medical attendance amounted to $907, and for drugs, $57. For the purpose of furnishing medical testimony, in addition to that of his regular physician, plaintiff was examined by three other physicians, who testified in his behalf. He was also examined by still three others, who testified for the defendant. It will not be necessary to refer to this testimony in

detail. Three of the physicians who testified for the plaintiff described symptoms of functional disorders, and gave it as their opinion that he was seriously sick. The fourth physician testified that he was sick, and seriously injured, if there had been an excretion of pus accompanied with the symptoms as represented. The three physicians who testified for the defendant stated, in substance, that, in their opinion, plaintiff was suffering from a nervous disorder, defined as traumatic hysteria, and that his real injury was slight. Two of these witnesses testified to having had experience in cases of this character, one being the regularly employed physician and surgeon of the railroad company. The court instructed the jury that the testimony of those who had had experience in such cases was entitled to greater weight than the testimony of those who had not had such experience; but there was nothing in the charge that limited the jury to the weight of the medical testimony. There was other testimony tending to prove the serious character of plaintiff's injury. Before the accident he was a strong, active man. He had become feeble and helpless, and required nursing. He had not improved under treatment, but was sick and disabled at the time of the trial, and had been in that condition ever since the accident,—a period of more than six months. We cannot, therefore, upon the record before us, say that the jury, considering all the testimony in the case, disregarded the instructions of the court in finding a verdict for the plaintiff.

4. *Excessive Damages.* The last assignment of error is as follows:

"The damages allowed by the jury are excessive, and so contrary to the testimony of the medical witnesses as to show that the jury were governed by passion and prejudice in fixing said damages."

What we have said respecting the verdict of the jury under the instructions of the court is applicable here, with the further comment bearing upon the question of excessive damages. The physicians who testified for the defendant stated that, under proper treatment, the plaintiff ought to recover soon; but his attending physician, who had observed the case from the beginning, testified that he did not think plaintiff would recover from the injury so as to be a well man again; and in this opinion he was corroborated by the testimony of another physician, whose judgment was the result of information obtained in the course of two examinations. This testimony, considered in connection with the other evidence, tended to prove a serious and permanent disability; and, if the jury believed it, there was sufficient basis for the damages awarded. "The finding of the jury on the whole evidence in a cause must be taken as negativing all facts which the party against whom their verdict is given has attempted to infer or establish from the evidence." *Hepburn* v. *Dubois,* 12 Pet. 375. In this view of the testimony, there is nothing in the proceedings to justify this court in saying that the jury were governed by passion or prejudice in fixing the damages, or that the damages are excessive. The judgment of the circuit court is affirmed.