### MARANDE et al. v. TEXAS & P. RY. CO.

(Circuit Court of Appeals, Second Circuit. July 1, 1903.)

#### No. 100.

1. JURORS—BIAS.
    Where, in an action for loss of cotton destroyed by fire, it was claimed at the opening of the trial that it might appear that the real party in interest was an insurance company, it was not error for the court to excuse a juror for bias on his statement that he could not act impartially as against an insurance company.

2. SAME—PREJUDICE.
    Error, if any, in excusing a juror for bias, was not prejudicial to plaintiffs, where it was not contended that the jury impaneled was not fair and impartial.

3. SAME—EVIDENCE—STATEMENTS OF SERVANTS—HEARSAY.
    In an action for the value of cotton destroyed by fire alleged to have resulted from defendant's negligence while the cotton was in its pos-

¶ 3. See Evidence, vol. 20, Cent. Dig. §§ 910, 912, 915.

session, statements made by defendant's servants, employed to guard the premises, as to the cause of the fire, after it had occurred and their duties had been terminated, were not admissible as res gestæ.

4. WITNESSES—CROSS-EXAMINATION.

Where a railroad engineer, in an action for loss of property alleged to have been fired by defendant's switch engine, on his direct examination testified that the engine alleged to have set the fire was in good condition, and provided with an arrester which made the emission of sparks impossible, questions on cross-examination as to how many times he had been to New York to testify what, in his judgment, was the standard among engineers for the best construction of locomotives, what route he took in traveling from New Orleans to New York, and whether he had noticed at night any sparks from the locomotive that was pulling his train, were irrelevant and immaterial.

5. TRIAL—RECEPTION OF EVIDENCE—REBUTTAL.

In an action to recover the value of property destroyed by fire alleged to have been set by defendant's engineer, evidence that on the night of the fire the water hydrants were blocked, and the hose would not operate, was a part of plaintiff's main case, and inadmissible in rebuttal.

6. SAME—FAILURE TO CALL WITNESSES—UNFAVORABLE INFERENCE—INSTRUCTIONS.

At the time of the trial of an action for loss of property alleged to have been destroyed by fire set by defendant's engine, one of several watchmen employed by defendant through a detective agency to guard the premises was dead, but his testimony had been previously taken, and was accessible to both parties. Two other watchmen were present in court, but the whereabouts of the fourth was not accounted for. *Held*, that an instruction, under such circumstances, that to withhold testimony which it was in the power of a party to produce in order to rebut a charge against it, where it was not supported by other equivalent testimony, may be as fatal as positive testimony in support of the charge, was sufficiently favorable to plaintiff, and it was not error to refuse to charge that defendant's failure to call the watchmen as witnesses raised a presumption that their testimony would have been unfavorable to defendant.

7. SAME—INSTRUCTIONS AFTER SUBMISSION OF CAUSE.

Where, in an action for negligence, the jury, after submission of the cause, asked whether the judge charged that, even if they found there was negligence on the part of the defendant, they must find for the defendant, unless that negligence caused the loss of the property sued for, it was not error for the court to answer, "Yes, the court so charged," and to refuse a request by plaintiff's counsel that, if the jury found there was negligence, they must find a verdict for plaintiff, unless they found that the negligence did not cause the loss.

In Error to the Circuit Court of the United States for the Southern District of New York.

This action has been twice tried. At the first trial the Circuit Court directed a verdict in favor of the defendant. The judgment entered on the verdict was affirmed by this court. 102 Fed. 246, 42 C. C. A. 317. The plaintiffs thereupon sued out a writ of error and the Supreme Court reversed the judgments below and granted a new trial. 184 U. S. 173, 22 Sup. Ct. 340, 46 L. Ed. 487. The second trial resulted in a verdict for the defendant. The plaintiffs ask for a reversal of the judgment upon various exceptions taken at the trial. The facts bearing upon this controversy are stated with great care and elaboration in the opinion of the Supreme Court and need not be repeated.

H. W. Hayward, George Richards, and Treadwell Cleveland, for plaintiffs in error.

Rush Taggart and Arthur H. Masten, for defendant in error.

Before TOWNSEND and COXE, Circuit Judges.

COXE, Circuit Judge. This action is to recover for the loss of cotton destroyed by fire while in the custody of the defendant. During the impaneling of the jury the counsel for the defendant asked the jurors whether, if it should appear that the real party in interest was an insurance company, that fact would influence their judgments. One of the jurors answered in the affirmative. A discussion thereupon arose as to the probability of the question of insurance arising upon the trial. That the question was likely to arise was stoutly asserted by the counsel for the defendant and as stoutly denied by counsel for the plaintiffs. The court ruled as follows:

"It is apparent from this stipulation that somehow or other in the course of this trial some question is going to be made as to insurance and the effect of it. I am not undertaking to rule upon it now; but in view of that fact, if the juror says he will be prejudiced one way or the other by the circumstance that he is himself in the insurance business, I am inclined to let him stand aside."

The plaintiffs contend that the court erred in excusing the juror and in permitting questions regarding insurance to be asked of the jurors generally. It is argued that this action of the court was calculated to produce the erroneous impression in the minds of the jurors that the issue was between an insurance company on the one hand and a railroad company on the other. "It is quite unnecessary," says the plaintiffs' counsel, "to dwell upon the effect which these remarks and these rulings of the judge may have had upon the minds of the jury. The unreasonable prejudice of so many jurors against insurance companies is well known. * * * The poison was instilled early in the trial, and we submit that the court instead of allowing these questions to be asked jurors should have spoken in no uncertain tone on this evident attempt to prejudice their minds on an issue that was not in any respect possible in the case." The entire argument is based upon two propositions: First, that jurors of the Southern District of New York are prejudiced against insurance companies and in favor of railroad companies, where these corporations are opposed to each other in litigation; and, second, that the jury were informed that this cause presented such a controversy. Neither postulate is well founded. There is absolutely nothing of which to predicate the theory that insurance companies receive different treatment from other litigants at the hands of juries in the federal courts. In order, however, that there might be no confusion on the subject in the minds of the jury the trial judge charged them explicitly that there was "no question of insurance in this case at all." It should be remembered that these rulings were made before the cause was opened to the jury and when the judge was compelled to rely upon the statements of counsel as to the nature of the controversy. The defendant's counsel insisted that it would appear that the real plaintiff was an insurance company and the juror, who was, ap-

parently, engaged in the business of insurance, stated that if this were so he could not act impartially. In such circumstances it was a wise exercise of discretion to excuse the juror and no error, in a civil cause at least, can be assigned because of such action. The plaintiffs were not injured. They do not complain that the jury actually impaneled was not a perfectly fair and impartial one.

The theory that the plaintiffs were prejudiced by the preliminary proceedings is founded upon the most unsubstantial conjecture and proceeds upon the assumption that a trial judge should be something more than a finite being, possessed, at least, of the divine attribute of omniscience. No judgment can survive such criticism. It is doubtful if a fiercely contested and long-continued jury trial can be conducted with absolute freedom from mistake. In the hurry and excitement of the conflict theoretical and technical precision is well-nigh impossible. When the record of such a trial is reduced to cold type and is calmly and deliberately examined the danger is that trivial and inconsequential errors, which passed unnoticed at the trial and produced no effect whatever upon the result, are apt to be magnified and given undue consideration. Realizing the perplexities and responsibilities of the trial court and the travail which precedes the birth of a verdict, the reviewing judges should approach the consideration of the record in no hypercritical spirit, not as controversialists, but with a determination to sustain a just verdict if convinced that it was rendered after a fair trial. If the trial judge had sustained the objections and had left the juror to be retired by the defendant's peremptory challenge the situation, from a practical point of view, would have been essentially the same. The judge could not foresee the course of the trial, his rulings were proper when made and, in view of his subsequent explanation to the jury, were not injurious to the plaintiffs. As is said by Mr. Thompson in his work on Trials, § 120:

"No party can acquire a vested right to have a particular member of the panel sit upon the trial of his cause until he has been accepted and sworn. It is enough that it appear that his cause has been tried by an impartial jury. It is no ground for rejection that, against his objection, a juror was rejected by the court upon insufficient grounds, unless, through rejecting qualified persons, the necessity of accepting others, not qualified, has been purposely created."

See, also, North. Pac. v. Herbert, 116 U. S. 642, 6 Sup. Ct. 590, 29 L. Ed. 755; South. Pac. v. Rauh, 49 Fed. 696, 1 C. C. A. 416.

The second point argued by the plaintiffs is that the court erred in excluding evidence of statements made by alleged agents of the defendant as to the origin of the fire. The defendant had employed the Boylan Detective Agency of New Orleans to furnish watchmen to guard its premises at Westwego. An officer of this agency was called by the plaintiffs and asked whether he saw these watchmen on the night of the fire and what they said to him. Assuming that these men were employés and agents of the defendant, it is clear that their declarations, after the fire and when their duties for the time being had terminated, were not competent as against the defendant and were hearsay only. If these statements of the watchmen had been made while the fire was still raging or during the continuance

of their agency in the performance of a duty which they owed to the defendant they might have been admissible; but they were not so made. They were no part of the res gestæ, were not made by the watchmen while acting as such and had no relation to their acts as guardians of the property in controversy. That property had been destroyed and their admissions thereafter were narratives of past occurrences not binding on the defendant.

In V. & M. R. Co. v. O'Brien, 119 U. S. 99, 7 Sup. Ct. 172, 30 L. Ed. 299, the court says:

"The fact remains that the occurrence had ended when the declaration in question was made, and the engineer was not in the act of doing anything that could possibly affect it. If his declaration had been made the next day after the accident, it would scarcely be claimed that it was admissible evidence against the company. And yet the circumstance that it was made between ten and thirty minutes, an appreciable period of time, after the accident, cannot, upon principle, make this case an exception to the general rule. If the contrary view should be maintained, it would follow that the declarations of the engineer, if favorable to the company, would have been admissible in its behalf as part of the res gestæ, without calling him as a witness; a proposition that will find no support in the law of evidence."

See, also, Packet Co. v. Clough, 87 U. S. 528, 22 L. Ed. 406; Luby v. Hudson R. R. Co., 17 N. Y. 131.

The third point argued by the plaintiffs is that the court erred in limiting the cross-examination of the engineer who was in charge of the defendant's switching engine at Westwego on the day of the fire. His direct testimony tended to show that the engine was in good condition and was provided with an arrester which made the emission of sparks impossible. On cross-examination he was asked how many times he had been to New York to testify what in his judgment was the standard among engineers for the best construction of locomotives, what route he took in traveling from New Orleans to New York and whether he had noticed, at night, any sparks from the locomotive that was pulling his train. These questions were objected to and the objections were sustained. A mere statement of the questions is sufficient to demonstrate their irrelevancy and immateriality.

Error in excluding evidence offered in alleged rebuttal is the subject of the plaintiffs' fourth ground of complaint. The simple question is whether the testimony offered was proper in rebuttal. If not, the judge in the exercise of his discretion was at liberty to exclude it.

After the defendant had closed its proof the plaintiffs sought to show that on the night of the fire the hydrants were blocked and the hose would not operate. This was clearly part of the plaintiffs' main case. The testimony was as available then as later in the trial and if they intended to rely upon the defective condition of the hydrants at the time of the fire as a ground of negligence they should have presented their testimony so that the defendant would have had an opportunity to answer it. No excuse for not doing so is suggested.

It is, perhaps, possible that, as the watchmen were employés of the defendant, the plaintiffs expected that they would be called by

the defense, thus giving the plaintiffs the wide latitude of cross-examination. If this surmise be well founded, the plaintiffs, in the expectation of securing larger advantages, took the risk of losing what they possessed and have no reason to complain of the result. The trial judge had the entire situation before him and was much better qualified than an appellate court to determine whether the case could be reopened upon the new averment of negligence with justice to the defendant. He evidently thought that it could not be and there is no pretense that in so ruling there was any abuse of discretion.

The court was requested to charge that the failure of the defendant to call the watchmen as witnesses raised a presumption that their testimony would not have been favorable to the defendant. This proposition is argued as plaintiffs' fifth point. One of these watchmen was dead but his testimony had been previously taken and was accessible to both parties; in fact, the plaintiffs attempted to read it on rebuttal. Two others were actually present in the courtroom and the whereabouts of the fourth was not accounted for. They were employed by the Boylan Agency to guard the cotton on defendant's premises and when the cotton was destroyed their connection with the defendant ceased; at least it does not appear that it continued. In these circumstances we are of the opinion that the plaintiffs were entitled to no more favorable charge than was actually given by the judge. He said:

"To withhold testimony which it is in the power of a party to produce, in order to rebut a charge against it, where it is not supplied by other equivalent testimony, may be as fatal as positive testimony in support or confirmation of a charge."

The last proposition argued relates to an alleged error in answering a question asked by the jury after they had retired to their room. The question was as follows:

"Did the judge charge that even if we found that there was negligence on the part of the defendant, we must find for the defendant unless that negligence caused the loss of this lot of cotton?"

The answer was "Yes, the court so charged."

This answer was in exact accord with the fact, he had so charged, the charge was correct and no exception was taken. It will be observed that the jury were not asking for new instructions, but were in doubt as to an instruction already given. It was, in legal effect, as if they had sent for a copy of the charge upon the point in question. After the judge had announced the answer which he intended to send to the jury counsel for the plaintiffs made the following request:

"I ask the court to charge that if the jury finds that there was negligence they must find a verdict for the plaintiffs unless they find that that negligence did not cause the loss."

After the jury has retired the functions of counsel cease and there should be no interference by them with communications between the jury and the court. It is too late to present additional arguments or new requests. Information of what takes place should not however, be withheld from counsel and they may enter an exception to any action of the court which they deem prejudicial to their client's rights.

There is no pretense that the answer actually sent to the jury was erroneous and we might safely rest the decision upon the proposition that the court in such circumstances is under no obligation to adopt the language of counsel even though more accurate than his own. It is enough that the answer was correct.

An examination of the plaintiffs' request makes it apparent that it states negatively the instruction given by the court and presents a question of metaphysics which a jury would hardly pause to consider. The difference, from a practical point of view, is so unimportant as to become negligible. Were it necessary, however, to choose between the two propositions we should have little hesitation in selecting the one charged by the court, remembering as we must that the burden was unquestionably upon the plaintiffs to prove that the loss occurred through the negligence of the defendant.

It follows that the judgment must be affirmed with costs.