FRANK A. DARY, Admr., *vs.* PROVIDENCE POLICE ASSOCIATION.

PROVIDENCE—NOVEMBER 6, 1905.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1)  *Beneficial Associations.    Sick Benefits.    Waiver.*

Plaintiff's intestate, a member of the Providence Police Association, became sick June 28, 1903. September 8, 1903, he rendered a bill for sick benefits from June 28 to July 31, which bill was returned to him for correction. April 11, 1904, he presented his bill, which included the former bill corrected, and a new claim for ninety-two days from August 1 to October 31, 1903, which bill was paid. Thereafter, he rendered no bill or made any claim, but deceased September 28, 1904. He was sick enough to entitle him to benefits from October 31, 1903, but this was unknown to the defendant.

May 5, 1904, the by-laws of the association were amended so as to provide that application for benefits must be made to the association in writing within one week from the commencement of the sickness:—

*Held,* that when intestate rendered the corrected bill defendant had an opportunity to ascertain regarding the physical condition of intestate. If it made such an examination it must have discovered that he was suffering from a fatal disease; if it did not, it could not complain. In such circumstances there was no waiver on the part of intestate and it was unnecessary for him to notify defendant from time to time of the continued existence of his disease.

*Held,* further, that, irrespective of the power of the defendant to enact by-laws having a retroactive effect there was nothing in the by-law of May 5, 1904, regarding notice, to show an intention to make it retroactive.

Waiver is not in the proper sense a species of estoppel unless the conduct of one party has induced the other to take such a position that he will be injured if the first be permitted to repudiate his acts. The burden of proving waiver rests on the defendant.

(2)  *Interest.    Beneficial Associations.*

Interest is allowable, though not stipulated for, as an invariable legal incident of the principal debt from the day of default, whenever the debtor knows precisely what he is to pay and when he is to pay it. But a beneficial association ought not to be treated as a delinquent debtor before demand made upon it followed by its refusal or neglect. While demand was unnecessary in this case for the purpose of keeping the claim alive, it was necessary for the purpose of creating the relation of debtor and creditor.

ASSUMPSIT.    Heard on agreed statement of facts.    Judgment for plaintiff.

DUBOIS, J.    This is an action of assumpsit brought by the

administrator of the estate of George H. Dary, deceased, against the defendant corporation, of which the decedent was a member up to the time of his death, to recover the sum of $446 for sick benefits due to the plaintiff's intestate, at the rate of $2.00 per day, from November 1, 1903, to May 5, 1904, and at the rate of 50 cents per day from May 6, 1904, to September 26, 1904.

The plea of the defendant is the general issue accompanied by an affidavit of valid defense upon the ground that the plaintiff's intestate waived his claim to the sick benefits for which this suit is brought.

The case was submitted to the court upon the following agreed statement of facts:

"The plaintiff's intestate was, at the time of his death, and for more than two years prior thereto had been, an active member of the Providence Police Association, and was also on the list of the active police force, drawing forty-five per centum of the regular pay of a lieutenant of police, being on the pension list.

"Under certain conditions the members of said Providence Police Association are entitled to sick benefits, according to the by-laws of said association, including the by-laws in force prior to May 5th, 1904, and those in force subsequently thereto to the time of the death of the plaintiff's intestate, where are hereby made a part of said statement.

"On the twenty-eighth day of June, A. D. 1903, the plaintiff's intestate became sick.

"September 8th, 1903, he rendered a bill to said association for benefits from June 28th, 1903. This bill was for a dollar a day, and the association claimed it was incorrect, and asked him to amend it. A case was pending in court to determine the status of one on pension list under rules of association.

"Said association met monthly for the payment of bills and sick benefits.

"He rendered a bill from June 28, 1903, for sick benefits to October 31st, 1903, less seven days omitted pursuant to the by-laws, which said bill was paid. A copy of said bill, marked Exhibit A, is hereto annexed and made a part hereof.

"Said bill amounted to balance due him of $249.50 and was paid by said association, after which time the said plaintiff's intestate rendered no bill to said association for sick benefits, or made any claim for the same during his lifetime.

"He died on the 26th day of September, A. D. 1904.

"Said plaintiff's intestate had diabetes from June, 1903, and from the time when he first claimed sick benefits to his death. He had also two cerebral hemorrhages, the last one being the immediate cause of his death.

"The plaintiff in this case has testimony to prove, and the defendant has no testimony to contradict the same, that the plaintiff was sick enough to entitle him to sick benefits after said 31st day of October, A. D. 1903, and that it was known to Doctor Clifford H. Griffin, his attending physician, who was also the police surgeon of the city of Providence, Rhode Island, during the entire time of said sickness, but it is admitted that these facts were unknown to the said defendant.

"Said plaintiff's intestate was under the care of Dr. Griffin from June, 1903, until the time of his death on September 26, 1904, as appears from a copy of the certificate of Dr. Griffin (the original whereof is in the possession of the said association), which said copy, marked Exhibit B, is annexed hereto and made a part hereof.

"The plaintiff in this case has testimony to prove, and the defendant has no testimony to contradict the same, that from June 28, 1903, to October 31, 1903, and from the latter date until about a week before his death, the plaintiff's intestate was not confined to his house, but was during his entire sickness from June, 1903, to the time of his death, prevented on account of his sickness from doing any kind of remunerative work, and was during all that period under the professional care of Dr. Clifford H. Griffin; but it is admitted that the fact of said physician's care since October 31st, 1903, was unknown to said association.

"The fact (if so) that the plaintiff's intestate was sick enough to entitle him to sick benefits after said 31st day of October, 1903, was unknown to the defendant, and the defendant took no steps to ascertain if this was so, because of its said ignorance,

although it is admitted that the plaintiff has testimony to prove that said plaintiff's intestate was sick enough to entitle him to said benefits from said last-named time until his death, and that the defendant has no evidence to the contrary.

"He was not mentally or physically unable to have claimed sick benefits during the period after said thirty-first day of October, A. D. 1903, except for a short time before his death, and his said sickness was not caused by any immoral or improper conduct.

"By the provisions of section 2 of said article XI in operation until May 5th, 1904, benefits were payable as follows:

"First, 'to active members of the Police Force, One Dollar per day while receiving full pay from the City, and Two Dollars per day when full pay ceases.'

"On May 5th, 1904, said section 2 of said article was amended so that benefits were payable as follows:

"First, To active members of the Police Association, Fifty Cents per day while receiving pay from the City, whether from the Police Pension Fund or otherwise, and Two Dollars per day when such pay ceased.

"By the last paragraph of 'second clause' of article XI of said by-laws in operation until amended May 5, 1904, it is provided that all applications for benefits under said article by *Honorary Members* must be made to the secretary in writing within two weeks from the commencement of the sickness or disability for which the benefits are claimed, and no such requirement by *Active Members* existed under the by-laws until the amendment thereof adopted May 5, 1904, when it was provided for the first time by clause 'third' of said section 2 of article XI of said by-laws that all applications for benefits under said article by honorary or superannuated members, or *members on the pension list* must be made to the secretary in writing within one week from the commencement of the sickness or disability for which the benefits are claimed.

"The claim made in this case is for sick benefits from October 31st, 1903, to September 26, 1904, inclusive.

"The Police Manual and the By-Laws of the Providence

Police Association are introduced as a part of the evidence to be submitted to the court."

"Exhibit A.

"Providence, R. I., Apr. 11/04.

"Providence Police Association

"To George H. Dary      Dr.

| | | |
|---|---|---|
| "To 9 Quarters Dues @ 2.00 (Jan. 1/02 to Mar. 31/04).......................... | $18 00 | |
| "By Amt. of legal dues (9 at 50c).......... | 4 50 | |
| | | $13 50 |
| "To 33 days sick benefits, June 28/03 to July 31/03 (inclusive), 33 days less 7 days, 26 days at 2.00...................... | | 52 00 |
| "(Bill for this item rendered and returned for correction.) | | |
| "To 92 days sick benefits from Aug. 1/03 to Oct. 31/03, at 2.00, inclusive............ | | 184 00 |
| | | $249 50" |

"Exhibit B.

"Copy of Dr. Griffin's Certificate,

"November 11, 1904.

"This is to certify that George H. Dary was under my professional care from June, 1903, till the time of his death.

"He suffered from diabetes mellitus and from that time till his death had two cerebral hemorrhages, the last one being the immediate cause of death.

"At no time during that period was he able to do any remunerative work.

"Respectfully yours,

"Clifford H. Griffin."

(1)     Most of the facts have been definitely agreed to by the parties, but as to several it is agreed that the plaintiff has

testimony to prove them, and that the defendant has no testimony in contradiction thereof; this amounts to an agreement that the plaintiff can prove them and is equivalent to an admission of their existence as facts. "*Certum est quod certum reddi potest.*" Under this agreed statement of facts the plaintiff is entitled to judgment unless his intestate waived his claim for sick benefits. Waiver has been defined to be the intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it. Bouv. Law Dict.

The defendant's claim is that there has been both an implied and an express waiver by the plaintiff's intestate acting by way of estoppel of the plaintiff's claim:

"First: The estoppel claimed is that the neglect of the plaintiff's intestate during his lifetime to make any claim for sick benefits for such a long time was not only evidence of the intention of the plaintiff's intestate not to claim such benefits, but that such neglect tended to the injury of the defendant by causing it to omit to take the necessary precautions which it would otherwise have taken to investigate the extent of the sickness claimed by said plaintiff's intestate, and was the kind of claim of which the defendant would not ordinarily have any knowledge without notice from the claimant," and

"Second: The fact that several months after the sickness for which the intestate did make a claim he put in his bill but omitted to make any claim for the continuance of said sickness to the date of the bill was an additional waiver of the claim beyond the time stated in the bill and was actually misleading to the defendant as to the continuance of said sickness, and this estopped plaintiff's intestate from making any further claim for the continuation of said sickness, no notice being given to said defendant."

Waiver is not in the proper sense a species of estoppel unless the conduct of one party has induced the other to take such a position that he will be injured if the first be permitted to repudiate his acts. 16 Cyc. 805 and note.

"The kind of waiver capable of being described as an estoppel should have the marks of an estoppel, by causing the innocent

party to forego some right or otherwise to change his position."
Bigelow Estoppel, 5th ed. p. 660, n. 1.

It does not appear that the defendant was induced to take
any injurious position by the alleged waivers, and the only
right that the defendant claims it was deprived of was the right
to investigate the extent of the sickness claimed by the de-
cedent.

If the deceased had never made claim for sick benefits there
would be great force in this position, but the facts agreed upon
disclose the following state of affairs:

September 8th, 1903, the plaintiff's intestate rendered a bill
to said association for sick benefits from June 28 to July 31
of that year, which bill was not paid, but was returned to him
for correction; that no further claim was made until April 11,
1904, which, without explanation, would seem a long time for
the sick claimant to wait, but it seems to be accounted for by
the statement that a case was pending in court to determine
the status of one on the pension list, as the plaintiff's intestate
was, under rules of the association.

The case referred to is evidently that of *Nickerson* v. *Provi-
dence Police Association*, 26 R. I. 40, which was decided March
16, 1904. Within a month after the determination of that
case George H. Dary presented his bill, dated April 11, 1904,
which included the former bill corrected and a new claim for
ninety-two days' sick benefits from August 1 to October 31st,
1903, and this bill was paid by the defendant. If the doctrine
of estoppel by waiver claimed by the defendant is sound, then
by the first bill, rendered September 8, for sickness from June
28 to July 31, the claimant waived his claim for any sickness
suffered by him in the thirty-nine days which had elapsed
between July 31 and September 8, and when he rendered his
later bill, which covered the time so waived, the defendant
should have declined to pay the same, upon that ground, which
it did not do, but paid him the amount of the original bill,
doubled by the decision of the court, and for ninety-two days
more of continuous sickness in addition thereto. The defend-
ant thus became acquainted with the claimant's method of
making his bills, and also had the opportunity, which it is fair

to presume it exercised, to make the proper and necessary examination of the decedent to ascertain his physical condition. If it did make such examination, it ascertained that he was suffering from diabetes mellitus, which is generally fatal; and if it did not, then it did not take advantage of its opportunities and can not now be heard to complain. If the defendant made the investigation that it should have made when its attention was called to the matter by the bill introduced after the termination of the lawsuit, which defined the rights of pensioners to be much greater than the defendant had anticipated, then it discovered that the claimant was suffering from a progressive and fatal illness of a kind and character that would entitle him to sick benefits for the remainder of his life, under the by-laws of the association. In such circumstances it was unnecessary for him to notify the defendant from time to time of the continued existence of his incurable disease except for the purpose of laying a foundation for claims for interest. The defendant, however, maintains that article XI, section 2, clause third, of the by-laws, adopted May 5, 1904, *supra*, governs all claims for sick benefits which have accrued thereafter, irrespective of the time of the origin of the sickness upon which they depend, and insists that the fact that the illness of the plaintiff's intestate after that date was in continuation of a sickness which began before the adoption of the by-law did not exempt him from the obligation to give the notice therein required. We can not assent to this proposition; there is nothing in the terms of the by-law indicative of an intention to make it retrospective in its operation. It clearly relates only to sickness or disability commencing thereafter. Even if the defendant association had the power to adopt by-laws which might operate retrospectively, a point not involved in the determination of this case, it did not attempt to exercise it in the by-law in question. There is no evidence that the decedent intended to relinquish his right to the sick benefits for which this suit was brought, and we do not think that an irresistible inference to that effect arises from the manner in which he made out his bills. The burden of proving

waiver rests upon the defendant and in our opinion has not been maintained.

The plaintiff claims that he is entitled to interest upon the amount of sick benefits due each month, from time to time when the defendant met for the payment of bills and sick benefits.

(2)    Interest is allowable, though not stipulated for, as an invariable legal incident of the principal debt, from the day of default, whenever the debtor knows precisely what he is to pay and when he is to pay it.    *Spencer v. Pierce*, 5 R. I. p. 71; *Durfee v. O'Brien*, 16 R. I. 213.    But a beneficial association ought not to be treated as a delinquent debtor before demand made upon it, followed by its refusal or neglect.    While demand was unnecessary in the circumstances of the case for the purpose of keeping the claim alive, it was necessary for the purpose of creating the relation of debtor and creditor.

There being no proof of demand earlier than the date of the writ, interest will be computed from that date.

Case remitted to the Superior Court, with direction to enter judgment for the plaintiff for $446.00 and interest, as aforesaid, and costs.

*Cooke & Angell*, for petitioner.

*Willard B. Tanner*, for defendant.