PEORIA, PEKIN AND JACKSONVILLE RAILROAD CO.

*v.*

HENRY REYNOLDS.

1. NEGLIGENCE—*presumption*—*burden of proof.* Where a railway car is thrown from the track, whereby a passenger for hire is injured, the presumption is, that the accident resulted either from the fact that the track was out of order, or the train badly managed, or both combined, and the *onus* is on the company to show it was not negligent in any respect.

2. Where the track of a railway company is out of repair, pieces of old rails being used to supply the place of a broken rail, and laid upon rotten or decayed ties, and a train of cars is run over such track at a speed of from twenty-five to thirty miles an hour, and an accident occurs resulting in personal injury, the company will be liable.

APPEAL from the Circuit Court of Tazewell county; the Hon. JOHN BURNS, Judge, presiding.

Messrs. DEARBORN & CAMPBELL, Mr. S. P. SHOPE, and Mr. GEORGE B. FOSTER, for the appellants.

Messrs. ROBERTS & GREEN, and Messrs. COHRS & RIDER, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action on the case, brought to the Tazewell circuit court, by Henry Reynolds, plaintiff, and against the Peoria, Pekin and Jacksonville Railroad Company, defendants. The declaration contained two counts, in which was alleged the duty of the defendants to keep their track in good repair, and to maintain the rails thereon sound and in good condition; that this duty was neglected, by reason whereof the defendants' track, between Virginia and Pekin, was out of repair and unsafe, and by reason of such neglect, and permitting and allowing a rail on the track to be out of repair, and broken and unsafe, the car in which plaintiff as a passenger for hire was being carried was thrown from the track, and the plaintiff injured. In the other count, the defendants are charged with a want of care in running the train, and want of care in keeping the track in good repair, by reason whereof the car was thrown from the track. There was also a stipulation that the parties would go to trial as on counts charging the injury to have been occasioned by defective equipments in the method of applying the brakes. To all which the defendants pleaded not guilty, and there was a trial by jury, who returned a verdict for the plaintiff. A motion for a new trial having been denied, judgment was entered on the verdict, to reverse which the defendants appeal, and make various points.

The leading facts are, briefly, that on the night of February 20, 1875, appellee purchased a ticket from Virginia to Pekin, on appellants' road. The distance between these points is eighty-six miles, with several intervening stations. Proceeding north, the southern train was met at Bath, which had just passed over the road. A short distance north of Bath, the

car on which was appellee was thrown from the track, down an embankment, turned bottom side up, and the appellee injured. The presumption, on the occurrence of such an accident, may be either that the track was out of order, or the train badly managed, or both causes combined to produce it, and the *onus* is on the company to show they were not negligent in any respect. The charge here is, the bad condition of the track and want of care in running the train.

A large volume of testimony was taken on both sides, which we have read with care, and we are satisfied the presumption has not been removed by any evidence produced by appellants, or by anything to be found in the record. We understand appellants as admitting the accident was caused by a broken rail, and as claiming that the breakage was caused by the unprecedented cold of that month.

The evidence will not permit us to come to this conclusion. There is some conflict in the testimony on this point, but giving to it all the force appellants claim, it falls far short of establishing their claim. That severe frosts cause contraction of iron rails, and heat expands them, thereby causing fractures, is undeniable. The evidence is conclusive that the track of this road, as a railroad, was in bad condition, and had been for some time prior to the accident. It was proven that pieces of old rails had been put in to repair damaged rails, and at the point where this accident occurred a piece of an old rail, about four feet long, had been inserted, and all the rails laid in the discarded chair, rejecting the use of the fish-plate—a safe and the most approved mode of connecting rails. Every one of common observation knows if a railroad track is made up of short pieces of iron rails, secured in that way, and resting upon old and decaying ties, that travel on it can not be safe, and a road so constructed is not properly constructed. It needs no expert to ascertain this. The shorter rails are, the more joints there will be. They will become depressed and battered, and insecurely held by the chair. The rush of a heavy engine and train of cars over them must greatly increase

the danger.  Appellants say that, two or three weeks prior to the day of the accident, a broken rail had been discovered at the place of the accident, and it is strange to learn from them how it was repaired.  They say, the ties being frozen solid in the ground, the section foreman cut about four feet off the end of the broken rail and inserted a sound piece of rail, of the proper length, placing chairs under each end of the piece so put in, spiking each chair down to the tie with four spikes, and double spiking the piece on each side to the centre, or underneath the rail.  We agree with appellee, that this mode of repairing is evidence of itself of great negligence.  It was at this point the accident occurred, and appellants were admonished there was a weak and dangerous point in their road, and common sense, it would seem, should have suggested to them it could be made more safe by using an entire rail—not by chipping a piece off an old and battered rail, but by an entirely new rail.  This, common prudence should have taught them.  It needs no testimony to prove that a long, new rail is safer than a piece, four feet long, of an old rail, which had been used for years.  Some of the experts testified they did not know of any safer way to make a repair than the one adopted.  They will, probably, know a better way in the future.

This road, from all the testimony, we should consider as out of order, dangerous and unfit for travel with safety.  Its condition admonished appellants that the danger of travel would be greatly enhanced by a high rate of speed.  There is some contest on this point also, but we think the weight of the evidence is, the train was running at the rate of twenty-five or thirty miles an hour, and one of the employees—the conductor, perhaps,—was heard to say he had to make up some lost time, and as it was Saturday, the last run of the week, it is quite certain they did not jog along quietly.  But if more convincing evidence is wanting of the rate of speed, it may be found in the circumstances attending the accident. The car, after leaving the track, was hurled down the embank-

ment, against a fence, distant twelve feet from the bottom of the slope, and bounced from the fence sixteen to twenty feet, bottom side up, striking a telegraph pole, and breaking that off within eight feet of the ground. To have produced such results, the speed must have been very high. The proof is by no means satisfactory that this break of the rail was caused by cold, as there was no extreme cold in that month. The weight of the evidence clearly is, that the defective repair and the high rate of speed caused the accident.

Something was said about insufficient brakes, and that was embraced in the stipulation; but there is nothing in the record to show this want of sufficient equipment, in that respect, contributed to the accident.

We are of opinion the jury decided right, on the evidence, and we are satisfied it fully sustains the verdict.

The judgment is affirmed.

*Judgment affirmed.*