[No. 1820]

## C. E. SHERMAN, RESPONDENT, *v.* SOUTHERN PACIFIC COMPANY, APPELLANT.

1. JURY—GROUND FOR CHALLENGE—"UNITED IN BUSINESS."

The relation of landlord and tenant between a juror and a party authorizes the sustaining of a challenge to a juror under Comp. Laws, 3259, subsec. 3, making it ground for challenge for cause to a juror that he is "united in business" with either party.

2. APPEAL AND ERROR—HARMLESS ERROR—SUSTAINING CHALLENGE TO JUROR.

Any error in sustaining a challenge to a juror is harmless if no objectionable persons are on the jury as finally constituted.

3. CARRIERS—INJURIES TO PASSENGER—COMPLAINT—NEGLIGENCE.

The complaint alleging injury to plaintiff while a passenger on defendant's train, through the derailment thereof, caused by the negligence of defendant and its servants, is sufficient, without pointing out the specific facts going to establish the negligence; a *prima facie* case of negligence being made out by showing the derailment.

4. DAMAGES—PERSONAL INJURIES—SUFFERING—EVIDENCE.

A witness may testify to the manifestations of pain he saw plaintiff exhibit while in a hospital because of the injury for which he sued.

5. WITNESSES—CROSS-EXAMINATION.

A conductor of defendant who in an action for injury to a passenger from derailment of a train has testified for the carrier that, immediately after the accident, he made an investigation of the railroad bed, cars, etc., and was unable to come to a conclusion as to the cause of the accident, may, to test his knowledge as to how thorough an examination he made, be asked as to whether or not the smoker was more broken or its occupants more frequently injured than in any other cars.

6. APPEAL AND ERROR—HARMLESS ERROR.

Allowing a witness, who had testified to making an examination immediately after the derailment of a train to be asked on cross-examination as to whether or not the smoker was more broken or its occupants more frequently injured than in other cars was harmless; his answer being that he did not know.

7. WITNESSES—CROSS-EXAMINATION.

The roadmaster who, in an action against a carrier for injury to a passenger from derailment of a train, had testified for defendant as to the perfect condition of the road, and gone into detail with reference to the amount of work done on the roadbed, the material used, and when the rails were put down, was properly allowed on cross-examination to be asked why it was necessary to put heavier rails down in a certain year, to which he answered that it was on account of the increase of weight of the rolling stock and the loads; plaintiff who contended the improvements had not kept pace with the increase of business, having the right, if he could, to shake witness's testimony by cross-examination so long as he confined it to the subject-matter brought out in the direct examination.

8. TRIAL—ARGUMENT OF COUNSEL—INFERENCE FROM ABSENCE OF WITNESSES.

Permitting counsel for plaintiff in an action for injury to a passenger from derailment of a train to draw an inference in his argument that because the engineer and conductor of the train were not called or their absence explained their testimony would have been adverse to defendant was not error.

9. EVIDENCE—OPINIONS—SPEED OF TRAIN.

A nonexpert may testify to the speed of a train.

10. CARRIERS—INJURIES TO PASSENGER—NEGLIGENCE—EVIDENCE.

It is incumbent on the carrier in an action for injury to a passenger from derailment of a train to repel by satisfactory proof every imputation of the slightest negligence.

11. CARRIERS—DUTY TO PASSENGERS.

The carrier owes to a passenger the duty to exercise the highest practical degree of care, skill, and foresight in the selection and use of suitable cars, motive power, appliances, and servants, and in the proper construction of its roadbed and track, and the operating and running of its train.

12. CARRIERS—INJURY TO PASSENGER—NEGLIGENCE—EVIDENCE.

The derailment of the car in which a passenger is riding is *prima facie* evidence of the carrier's negligence, and it is its duty to know and show the facts.

### ON PETITION FOR REHEARING

1. APPEAL AND ERROR—REVIEW—HARMLESS ERROR.

Where, on the trial of an action against a railroad for injuries to a passenger by collision, plaintiff's attorney in his argument inadvertently referred to the nonattendance of witnesses for defendant, when, in fact, they were present and

testified, it is no ground for reversal, where the statement is withdrawn and defendant failed to account for the accident to the satisfaction of the jury, and to overcome the *prima facie* presumption of negligence which arises from the derailment of the car in which plaintiff is riding.

2. CARRIERS—PRESUMPTION OF NEGLIGENCE—DERAILMENT OF CAR.

A presumption of negligence arises against a carrier immediately on plaintiff proving that he was injured by the derailing of the car in which he was riding, and it is for the jury to determine from the evidence in rebuttal as to whether defendant sufficiently overcame this presumption.

APPEAL from the District Court of the Second Judicial District of the State of Nevada, Washoe County; *John S. Orr*, Judge.

Action by C. E. Sherman against the Southern Pacific Company. Judgment for plaintiff. Defendant appeals. **Affirmed.** Petition for rehearing. **Denied.**

The facts sufficiently appear in the opinion.

*Lewers & Henderson*, and *Frank Thunen*, for Appellant.

*Cheney, Massey & Price*, and *Smith & Fink*, for Respondent.

By the Court, SWEENEY, J.:

This action was instituted on the 28th day of September, 1907, in the District Court of the Second Judicial District of the State of Nevada in and for Washoe County, to recover from the defendant the sum of $20,000 for personal injuries sustained by plaintiff by reason of the derailment of one of defendant's trains near Deeth, Nevada, on which the plaintiff was traveling en route from Ogden, Utah, to Tonopah, Nevada, on the 22d day of January, 1907.

It appears from the transcript that the respondent, a miner by occupation, 40 years of age, and in perfect health, purchased a railroad ticket from the Southern Pacific Company in Ogden, Utah, to Tonopah, Nevada. When about a mile east of Deeth, in the State of Nevada, the seven cars behind the express left the track. Respondent was in the smoker, which, owing to the derailment,

was thrown over an embankment, turning on its side, and from the wreck respondent emerged with injuries, which, as alleged, crippled him for life. On account of these injuries sustained by reason of the wreck, and the suffering respondent was forced to undergo in a temperature registering 20 degrees below zero at the time of the derailment, and other physical sufferings endured by respondent by reason of the accident, upon the case being tried before the court, sitting with a jury, the respondent was awarded a verdict in the sum of $15,000. The defendant interposed a motion in the trial court to set aside the verdict and for a new trial upon the grounds: First, excessive damages appearing to have been given under the influence of passion and prejudice; second, insufficiency of evidence to justify the verdict; third, that said verdict was against law; fourth, errors in law occurring at the trial and excepted to by the defendant; fifth, misconduct of the jury by which defendant was prevented from having a fair trial. The motion was denied, and the defendant prosecutes this appeal from the final judgment and order.

Aside from the specifications of insufficiency of the evidence to sustain the verdict, there are thirty-five separate assignments of error in the proceedings of the trial court. We will consider those assignments of error, which are urged as reversible errors, in the order in which they are presented.

In the selection of the jury, appellant assigns that the court erred in sustaining the challenges of plaintiff to the jurors, H. H. Clark and S. H. Wheeler, upon the ground that the relation of landlord and tenant existed between defendant and said jurors. It is maintained by counsel for appellant that nowhere in our statute which sets forth what circumstances shall be sufficient to disqualify a juror otherwise competent from sitting in any particular case is there a ground of challenge because of the relationship of landlord and tenant, which makes such relation a disqualification.

The third subdivision of section 164 of the civil prac-

tice act (Comp. Laws, 3259) of Nevada, which enumerates the grounds for which challenges for cause may be taken, reads as follows: "Third—Standing in the relation of debtor or creditor, guardian and ward, master and servant, employer and clerk, or principal and agent, to either party; or being a member of the family of either party; or a partner, or united in business with either party; or being security on any bond or obligation for either party."

We believe under this section, where it appears that the relation of landlord and tenant exists, there is sufficient statutory authorization for the court to grant the challenge. All parties to an action should be entitled to a fair, unprejudiced jury, and it requires no stretch of imagination to understand that under some circumstances a tenant may for business interests be influenced or embarrassed in his verdict.

"United in business," as expressed in the statute, should be construed to mean any business relation which would, within the sound discretion of the trial court, indicate that the juror might be interested, biased, influenced, or embarrassed in his verdict.

The rule, we believe, is stated clearly in Cyc. as follows: "A person is not competent to serve as a juror in an action where there exist any business relations between him and one of the parties calculated to influence his verdict. This rule applies when a party and a juror are partners in business, or where there exists between them the relation of master and servant, employer and employee, landlord and tenant, or attorney and client." (24 Cyc. p. 276.)

At common law, a juror standing in the relation of landlord and tennant was disqualified. "A tenant holding land from year to year as a cropper is disqualified as a juror in a case where his landlord is a party." (*Pipher* v. *Lodge*, 16 Serg. & R. (Pa.) 214; 5 Bacon's Abridgments, 352; Coke's Littleton, 158 A and 157 B.)

The great trend of modern authority is to exclude from juries all persons who by reason of their business

or social relations, past or present, with either of the parties, could be suspected of possible bias, even though the particular status or relation is not enumerated in the various state statutes and codes, most, if not all, of which, like the statutes of Nevada, are merely declaratory. Thus the Kentucky Court of Appeals has held that a stockholder in a corporation which owns stock in another corporation is disqualified to act as a juror in an action against the latter corporation. (*McLaughlin* v. *L. El. L. Co.*, 100 Ky. 173, 37 S. W. 851, 34 L. R. A. 812.)

The Supreme Court of Florida held (1906) that in the trial of a baggagemaster for embezzlement of the property of a passenger it was the better practice to exclude from the juries employees of the same company as the defendant. (*Hopkins* v. *State*, 52 Fla. 39, 42 South 53.)

The Supreme Court of Pennsylvania has decided that in an ejectment suit by the heirs of an insolvent debtor the executor of a deceased creditor was not a competent juror. (*Swull* v. *Jones*, 6 Watts & S. 122.)

The Supreme Courts of Nebraska and Colorado have held that a shipper over the railroad of one of the parties who has received favors in the past and hopes for others in the future is disqualified as a juror. (*Railway Co.* v. *Cook*, 37 Neb. 435, 55 N. W. 943; *Denver* v. *Driscoll*, 12 Colo. 520, 21 Pac. 708, 13 Am. St. Rep. 243.)

The Supreme Court of Iowa has held that the court may on the ground of probable prejudice sustain a challenge to a juror, although the relationship is not within the degree prescribed by statute as rendering the juror incompetent. (*Wisehart* v. *Dietz*, 67 Iowa, 121, 24 N. W. 752.)

The Supreme Courts of Colorado and Louisiana have held that where there is a family connection reasonably calculated to prevent the juror from being impartial, although not amounting to actual relationship, the juror is disqualified. (*Buddee* v. *Spangler*, 12 Colo. 216, 20 Pac. 760; *State* v. *Kellogg*, 104 La. 580, 29 South. 285.)

The identical point urged by counsel for appellant in this assignment of error has been decided by the Supreme Courts of Pennsylvania and of New York adversely to

appellant's contention. "That the juror is a tenant of a party is in itself a sufficient ground of challenge." (*Harrisburg Bank* v. *Forster*, 8 Watts, 304; *Hathaway* v. *Helmer*, 25 Barb. 29.)

But even where the action of the trial court is open to criticism, it does not amount to reversible error. It has been held many times that a party has no right to any particular juror, but only to a trial by an impartial jury. (*State* v. *Hamilton*, 35 La. Ann. 1043; *State* v. *Kluseman*, 53 Minn. 541, 55 N. W. 741.)

If the trial court errs in sustaining a challenge for cause, the error is without prejudice if an impartial and unobjectionable jury is subsequently obtained to try the case. (*State* v. *Carries*, 39 La. Ann. 931, 3 South. 56; *State* v. *Creech*, 38 La. Ann. 480; *State* v. *Hamilton*, 35 La. Ann. 1043, *supra*; *State* v. *Barnes*, 34 La. Ann. 395; *State* v. *Kluseman*, 53 Minn. 541, 55 N. W. 741; *Omaha R. Co.* v. *Cook*, 37 Neb. 435, 55 N. W. 943; *Armsby* v. *People*, 2 Thomp. & C. 157; *State* v. *Harding*, 16 Or. 493, 19 Pac. 449; *State* v. *Ching Ling*, 16 Or. 419, 18 Pac. 844; *Northern Pac. R. Co.* v. *Herbert*, 116 U. S. 642, 6 Sup. Ct. 590, 29 L. Ed. 755, affirming 3 Dak. 38, 13 N. W. 349; *Southern Pacific Co.* v. *Rauh*, 49 Fed. 696, 1 C. C. A. 416.)

In *Southern Pacific Co.* v. *Rauh*, decided by the Circuit Court of Appeals for the Ninth Circuit, it was held: "Rejection by the court of a challenged juror for insufficient reasons is no ground for exception when it appears that the remainder of the jury was made up of persons to whom the excepting party made no objections."

In *Northern Pacific Railway Company* v. *Herbert* it was held: "A trial by an impartial jury being all that a party can demand, the allowance of a challenge for cause, even if the cause was insufficient, is no ground of complaint where a competent and unbiased jury was finally selected." (*Northern Pacific Ry. Co.* v. *Herbert*, 116 U. S. 642, 6 Sup. Ct. 590, 29 L. Ed. 755.)

In the case at bar, it does not appear that there were any objectionable persons to appellant upon the jury as finally constituted. In the recent case of *Murphy* v.

*Southern Pacific Company*, 31 Nev. 120, in passing upon the question of a juror challenged for cause, who was formerly in the employ of the defendant corporation for fifteen years, though not in the employ of the company at the time of the trial, and otherwise qualified as a juror, we said: "While it is true the mere fact that a juror has been in the former employment of one of the parties to an action, where he is an otherwise competent juror, is no disqualification, yet it is further true that the court as a trier of challenges is given a great deal of discretion in allowing or disallowing challenges to the end that a fair and impartial jury may be secured.  *  *  * In cases of a civil character, the authorities are practically uniform in holding that by reason of the large discretion reposed in the trial judge in determining challenges that a judgment will only be reversed where it is shown that there has been a gross abuse of such discretion.  In the present case it is not denied but that a fair and impartial jury was afterwards secured, and that was all that a defendant could demand."

The action of the trial court, after discovering from an examination of the jurors on their *voir dire* that the relation of landlord and tenant existed between them and the defendant company, in allowing the challenges for cause we believe was proper under subdivision 3 of the Statutes and the great weight of modern authorities.

It is next urged by counsel for appellant that the court erred in overruling the objection of defendant to the introduction of any testimony on behalf of the plaintiff on the ground that the complaint did not state facts sufficient to constitute a cause of action.  This objection was mainly based on the ground that no allegation appeared in the complaint as to how or in what manner or in what method or in what particular the defendant was guilty of negligence.  The appellant, through this contention, seems to believe that it is incumbent upon the plaintiff to allege in his complaint in minute particular the exact cause of the derailment by which the train was thrown from the track, other than in the general allegation of

attributing the accident to the neglect of the defendant.

In view of the allegation of negligence herein pleaded, which we will review, we do not believe there is any merit in this contention. Were such a contention sound, carriers would be in many instances immune from the consequences of their negligence. A train drops through a bridge. How are the injured passengers to know whether it was from rotten timbers, washing out of the piers, defective steel, or other wanton negligence? A head-on collision occurs. Can the injured passengers allege that it was because of a drunken engineer, an incompetent conductor, an absent switchman, or a sleepy train dispatcher? How is an injured passenger to say, when a derailment occurs, that it was because the track was defective, a slide occurred, a truck had broken, or an old and inferior car had been used? That such is not the law has been held by the overwhelming weight of modern decisions. The maxim, "*Res ipsa loquitur*," has a peculiar application to this class of cases. (6 Cyc. 628, and cases therein cited.) That proof of a derailment of a train is *prima facie* evidence of defect in the track or machinery or fault in the operation of the train has been often held by practically every state in the Union.

A complaint charging defendant with an act injurious to plaintiff with a general allegation of negligence in the performance of such act is sufficient. And, even where a special demurrer or motion to make more definite and certain is filed, the particulars of the negligence need not be set forth if the facts are known to the defendant, or such that the plaintiff could not be expected to know them.

In *Kansas City, M. & B. R. Co.* v. *Flippo*, 138 Ala. 498, 35 South. 460, the court said: "Under our system of pleading, very general averments, little short of mere conclusions, of a want of care and consequent injury, leaving out the facts which constitute and go to prove the negligence, meet all the requirements of the law."

In *House* v. *Meyer*, 100 Cal. 593, 35 Pac. 308, the court said: "The demurrer to the complaint was properly over-

ruled. In an action like this, to recover damages resulting from the alleged negligence of a defendant, a general allegation of negligence upon the part of the defendant is sufficient. 'The negligence is the ultimate fact to be pleaded, and is not a legal conclusion.'"

To the same effect is Bliss on Code Pleading, sec. 211.

In *Cunningham* v. *L. Ry. Co.*, 115 Cal. 566, 47 Pac. 453, the court said: "The demurrer to the complaint was properly overruled. While the negligence was averred in general terms, such mode of presenting the facts is sufficient in this character of action, where, as a general thing, the more specific facts are more largely within the knowledge of the defendant than that of the plaintiff; and the complaint cannot therefore be held open to the objection of uncertainty."

In the case of *Gulf* v. *Washington*, 49 Fed. 349, 1 C. C. A. 288, Judge Caldwell, speaking for the Circuit Court of Appeals for the Eighth Circuit, said: "It is very well settled that a general allegation of negligence, without stating the particular acts which constituted the negligence, is good against a general demurrer."

In *McGonigle* v. *Kane*, 20 Colo. 298, 38 Pac. 369, the Supreme Court of Colorado said: "As a rule, negligence may be pleaded generally. It is an ultimate fact, and only ultimate facts are to be pleaded. Bliss in his work on Code Pleading (section 211a) says: 'The general allegation of negligence is allowed as qualifying an act otherwise not wrongful. It is not the principal act charged as having caused the injury, but it gives color to the act, makes it a legal wrong. It is the absence of care in doing the act.' Negligence being the ultimate fact to be established, a general allegation is sufficient. 'To allege,' says Rothrock, J., in *Grinde* v. *Railroad Co.*, 42 Iowa, 376, 'would be to plead the evidence which is not allowable.'" (*Hill* v. *Fairhaven & W. R. Co.*, 75 Conn. 177, 52 Atl. 726.)

In *L. & N. R. Co.* v. *Jones*, 45 Fla. 414, 34 South. 248, the Supreme Court of Florida said: "The rule as established in this state in negligence cases is that it is not necessary for the declaration to set out the facts consti-

tuting the negligence, but an allegation of sufficient acts causing the injury, coupled with an averment that they were negligently and carelessly done, will be sufficient. And where the negligence is alleged in general terms, and not confined to any specific acts of negligence, any acts of negligence contributory to the injury may be shown in proof."

In *Rinard* v. *Omaha, K. C. & E. Ry. Co.*, 146 Mo. 286, 64 S. W. 127, the Supreme Court of Missouri said: "The objection urged against it, however, that it does not specify the particular act of negligence which it is claimed caused the injury, is answered by the cases of *Sullivan* v. *Railway Co.*, 97 Mo. 113, 10 S. W. 852," etc. "These cases have been cited approvingly and followed in *Dickson* v. *Railway*, 104 Mo., loc. cit. 502, 16 S. W. 381,"·etc. "In all these cases the negligence was charged in general terms. The negligence charged in the case at bar is as specific as that charged in the Sullivan case, *supra*, or in any of the cases that have followed it, and is a substantial compliance with the requirements laid down in the Gurley case, 93 Mo. 445, 6 S. W. 218.   *   *   *"

In *Galveston, H. & S. A. Ry. Co.* v. *Croskell*, 6 Tex. Civ. App. 171, 25 S. W. 492, the Court of Civil Appeals of Texas said: "The Texas and Pacific Railway Company excepted to that part of appellant's petition which charges that it negligently struck the cars of the Galveston, Harrisburg and San Antonio Railway Company upon the ground that it does not show how said train negligently struck said cars so placed there. We think the allegation was sufficient. It is not necessary for a party to plead his evidence. ·It is only necessary to allege the facts which show the liability of the party complained against. This was done by declaring that the act was negligently done."

In *Chaperon* v. *Portland Gen. El. Co.*, 41 Or. 42, 67 Pac. 929, the Supreme Court of Oregon said: "We have recently held, after a careful review of the authorities, that it is sufficient in a declaration upon negligence, to specify the particular act, the commission or omission of which caused the injury, conjoining with it a general averment that it

was negligently and carelessly done or omitted, and that it is unnecessary to go further and particularize or point out the specific facts going to establish the negligence relied upon." (*Brown* v. *Chattahoochee Lumber Co.*, 121 Ga. 809, 49 S. E. 839; *Senhenn* v. *Evansville*, 140 Ind. 675, 40 N. E. 69; *Scott* v. *Hogan*, 72 Iowa, 614, 34 N. W. 444; *Louisville Ry. Co.* v. *Wolfe*, 80 Ky. 82; *Dolan* v. *Alley*, 153 Mass. 380, 26 N. E. 989; *Rogers* v. *Truesdale*, 57 Minn. 126, 58 N. W. 688; *McCarthy* v. *N. Y. Cent., etc.* (Super. Buff.) 6 N. Y. Supp. 560; *New York R.* v. *Kistler*, 66 Ohio, 326, 64 N. E. 130; *Waterhouse* v. *Joseph*, 12 S. D. 397, 81 N. W. 725, 48 L. R. A. 157, 160.)

In *Waterhouse* v. *Joseph, supra,* the court said: "It is further contended by the appellant that it does not appear from the complaint specifically in what respects the building was negligently constructed, nor in what respect the materials used were insufficient for such a structure; but it seems in general that a complaint specifying the act, the commission or omission of which caused the injury, and averring generally that it was negligently and carelessly done or omitted, will suffice. (14 Ency. Pl. & Pr. 334, and cases cited.)

In *Cederson* v. *Oregon R. & Nav. Co.*, 38 Or. 358, 62 Pac. 642, the Supreme Court of Oregon said: "The third assignment is that the court ought to have required the plaintiff to make his complaint more definite and certain by stating the particular acts and things constituting the alleged negligence and carelessness in the operation of said train or the engine and cars attached thereto. * * * It cannot be supposed that strangers should be intimately cognizant of the immediate condition of the appliances, and the exact manner of the management and operation of a railroad and its engines and cars. These are matters peculiarly within the specific knowledge of the persons or company having the road in charge, so that the showing is strengthened by the attendant circumstances. Under such conditions, it was not error to deny the motion."

In *Texas & P. Ry. Co.* v. *Easton*, 2 Tex. Civ. App. 380, 21 S. W. 576, the Court of Civil Appeals of Texas said:

"The plaintiff's petition charges the negligence to which his injuries are ascribed as the negligence of 'the defendant, the Texas and Pacific Railway Company, its agents and employees,' without specifying the particular agent or employee guilty of the negligence causing the misfortune, and without stating the specific act of negligence complained of. The appellant complains of the action of the court in overruling the special exception addressed, on account of the omission stated, to the plaintiff's petition. The facts alleged in the petition justify the inference that the accident described was due to the negligence of the defendant. The evidence developed on the trial showed that this negligence was to be ascribed to the engineer in charge of the defendant's train. This fact, however, the defendant in framing his petition could not be supposed to know. It was, on the contrary, a fact peculiarly within the knowledge of the defendant. This peculiar knowledge, together with the absence of information on the part of plaintiff as to the special source of the injuries complained of, is, we think, naturally to be inferred from the averments of the petition. Under such circumstances, the pleader is not held to the specific averments the absence of which appellant complains of."

The complaint in the case at bar specifically alleges: "That on the 22d day of January, 1907, while plaintiff was such passenger in the car on the train of defendant, and while plaintiff was being carried, transported, and conveyed by defendant, pursuant to said contract, from Ogden, Utah, to Hazen, Nevada, upon the train of said defendant, said defendant, wholly disregarding its duty and obligation to plaintiff, carelessly and negligently suffered and permitted to be derailed and thrown from the track at a point near Deeth, Nevada, the train on which plaintiff was riding as a passenger and the car in which plaintiff was a passenger; that, by reason of said gross negligence and carelessness of defendant, its servants, and employees, said train and car were derailed and thrown from the track and overturned; that by reason thereof,

and as a direct result thereof, plaintiff was thrown down and violently hurt, injured, bruised, and wounded and knocked insensible; and his head broken and the skull bones broken, and the left hand broken and crushed and twisted, and on many parts of his body he was cut, bruised, hurt and wounded, and he was crippled and greatly injured, and his general health impaired, and he was caused to lie in a sick bed for many months, and for a long time remained sick and suffered and still continues to suffer great, intense pain and distress, and he was and is now crippled, and plaintiff is informed and believes, and therefore basing the allegation on information and belief alleges the fact to be, that he will remain a cripple for life; that his wounds were attended to at the railroad hospital at Sacramento, Cal., whither he was taken after the wreck; that plaintiff's hand is deformed and he will never be able to work at his trade as a result thereof; that the injury in plaintiff's head is permanent, causing him pain and suffering, and affecting his hearing; that the injury to his head is very dangerous and permanent."

This allegation sufficiently pleads negligence on behalf of the defendant, and is clearly within the maxim and the well-defined line of authorities that a passenger makes out a *prima facie* case when he proves that he was a passenger and that he was injured without his fault, and it is unnecessary, as we view the authorities, after pleading the fact that the accident which caused the injury was due to the negligence and carelessness of the defendant, to go further and particularize or point out the specific facts going to establish the negligence relied upon, and for these reasons we see no merit in this second assignment of the appellant.

The appellant contends that the court erred in overruling the objection of defendant to the question asked the witness Reynolds calling for oral manifestations of pain on the part of the plaintiff long subsequent to the injury, and in denying the motion to strike. We do not think that the admission of this evidence was erroneous. The witness Reynolds was in the same hospital wherein the

plaintiff was convalescing, and gave direct testimony as to what he saw and heard of the manifestations of pain plaintiff suffered. One of the elements for which the plaintiff seeks recovery of damages is for the physical pain he endured by reason of the accident, and, so long as the evidence was confined to direct testimony of what manifestations of pain the witness observed the plaintiff to be suffering, it was not error. It is conceded that the plaintiff was badly injured, and pain and suffering naturally followed, and whether or not the plaintiff really suffered was a material point to be proven by the plaintiff, also the extent of the suffering. The testimony complained of was quite unimportant, however, and, even if conceded to be error, would not be sufficiently fatal to warrant a reversal. The authorities seem to be uniform that a witness may state the apparent physical condition of a man in cases of this character, so long as the witness speaks directly within his own knowledge.

The Supreme Court of California, speaking through Justice Garoutte, in the case of *Green* v. *Pacific Lumber Company*, 130 Cal. 435, 62 Pac. 747, in passing upon an almost identical point as to whether or not the nurse might testify as to the complaints of pain or suffering on the part of the party injured, said: "The witness who acted as a nurse for plaintiff during the first week after her injuries were received was asked the following question: 'You may state any complaints of pain and suffering which you heard.' The objection to this question upon the ground that the witness was not an expert amounts to nothing. No principle of expert evidence is involved in the question. Neither do we consider the evidence objectionable as hearsay. Involuntary declarations and exclamations of a person's present pain and suffering are admissible as tending in some degree to show his physical condition. Of course, when these declarations only amount to statements of his past condition they should be rejected."

President Taft, while sitting as circuit judge of the Circuit Court of Appeals for the Sixth Circuit of the United

States, stated as follows: "Such evidence was clearly admissible. This is expressly ruled in the case of *Insurance Co.* v. *Mosley*, 8 Wall. 379–405, 19 L. Ed. 437, where Mr. Justice Swayne, to illustrate how declarations may be evidence as verbal acts, uses this language: 'Upon the same ground the declarations of the party himself are received to prove his condition, ills, pain, and symptoms, whether arising from injuries, sickness, accidents, or by violence. If made to a medical attendant, they are of more weight than if made to another person; but to whomsoever made they are competent evidence. Upon this point the leading text-writers of evidence, both in England and in this country, are in accord.' " (*B. & O. Ry. Co.* v. *Rambo*, 59 Fed. 75, 8 C. C. A. 7.)

Counsel for appellant further maintains that the court erred in overruling defendant's objection to the question asked defendant's witness on cross-examination: "Isn't it a fact that usually the smoker is more broken and that the occupants of the smoker are more frequently injured than in any other cars on the road?" Also in overruling defendant's objection to the question on cross-examination as to delays in the delivery of freight, and annoyances to shippers consequent thereto. Also in refusing to instruct the jury to disregard the statement of counsel for plaintiff to the effect that the defendant had failed to produce witnesses whose attendance was not shown to be available. We see no error in the ruling of the court in allowing the witness to answer the question with reference to whether or not the smoker was more broken or the occupants of the smoker more frequently injured than in any other cars on the road. Prior to this question the witness, who was a conductor in the employ of the defendant company, had testified that he had made an investigation of the railroad beds, cars, etc., immediately after the accident, and was unable to come to any conclusion as to the cause of the accident.

The question complained of was on cross-examination, and was admissible to test his knowledge as to how thorough an investigation he had made of the cars and

character of the wreckage, etc.   In any event, the testi-
mony was not prejudicial to the defendant's cause,
because in answer to the question complained of the
witness answered that he did not know.   For the same
reason the question complained of as to the testimony of
the witness Allen was admissible.   Allen testified in his
direct examination that he was roadmaster of the South-
ern Pacific Company on that portion of the road on which
the derailment occurred.   He had been put on the stand
by the appellant to prove the perfect condition of. the
railroad, and in that connection had gone into detail with
reference to the amount on work done on the roadbed,
the material used, when the rails had been put down.
On cross-examination he was asked why it was necessary
to put heavier rails down in 1902, and his answer was on
account of the increase of the weight of the rolling stock
and the weight of the loads.   In negativing the direct
testimony of the witness, counsel for respondent on cross-
examination had the undoubted right to prove by the wit-
ness, if possible, that the improvements on the railroad
track had not kept pace with the increasing business of
the defendant corporation, and consequently the track
was not suited to the greatly increased traffic, the weight
of the rolling stock, etc.

It was beneficially important to the plaintiff's cause to
show, if he could, that the company had not kept pace
with the amount of traffic in supplying a proper roadbed,
rails, etc.   On the cross-examination of the roadmaster,
who had testified as to the perfect condition of the road,
counsel for plaintiff had the right to shake the testimony
of said witness if he could, so long as he confined his
examination to the subject-matter brought out in the
direct examination.   We do not see anything improper in
the cross-examination.   Neither do we see any error on
the part of the court in permitting counsel for respondent
to draw an inference in his argument that because the
train engineer and passenger conductor of the derailed
train were not called to testify during the trial of the
case by the defendant company that their testimony would

be adverse to it; and we do not think it was error on the part of the court to permit counsel for plaintiff to draw the inference in his argument and to state that, they being in the employ of the defendant company and under its control, it was either the duty of the appellant to produce them or to explain their absence. This we believe to be legitimate argument, and in the present case where these two most important witnesses were in charge of the train and present at the time of the accident, they were presumed to be still in the employ of the defendant company, until otherwise shown by defendant company, and we believe their absence should be explained to the jury, or else the jury be permitted to infer, in view of the fact that their presence could be had by the defendant company should it so desire, that their testimony might be adverse to it.

We believe the rule upon this subject is properly laid down in Cyc., which reads as follows: "Failure to call an available witness possessing peculiar knowledge concerning facts essential to a party's case or to examine such witness as to the facts covered by his special knowledge, especially if the witness be naturally favorable to the party's contention, gives rise to an inference sometimes denominated a 'strong presumption of law' that the testimony of such uninterrogated witness would not sustain the contention of the party. * * *" (16 Cyc. p. 1062.)

Counsel for appellant further contends that the court erred in permitting the plaintiff to introduce nonexpert testimony as to the speed of the train. The testimony elicited, to which defendant's objection is aimed, we do not believe prejudicial error for which defendant is entitled to a new trial. It cannot be said that the testimony is expert testimony. Indeed, it may with truth be said that, if a passenger is asked to give his opinion as to the rate of speed the train is going, it is not expert testimony, nor subject to any of the strict rules relative to the admission of expert evidence. The testimony is

admissible and valuable just for what weight may be given it by the jury. The evidence is competent, but the jury is to weigh the credence they will give it, considering the character of the witness and the knowledge of speed which he may disclose he possesses. The following rule taken from 17 Cyc. p. 105, and supported by cases from practically every state in the Union, we believe succinctly and properly states the rule: "An observer may state his estimate of the apparent speed of moving objects, as animals, a dummy engine, an electric or hand car, a carriage, or railroad train. Such a witness is not an expert and need not have the training of one, although he characterizes the rate of speed as dangerous, fast, high, very fast, reckless, etc."

The three following assignments of error are set forth by counsel for appellant:

That the court erred in instructing the jury that it was incumbent upon the defendant to repel by satisfactory proof every imputation of the slightest negligence.

That the court erred in instructing the jury that the defendant was legally bound to exercise the highest practicable degree of care, skill, and foresight in the selection and use of suitable cars, motive power, appliances, and servants, and in the proper construction and maintenance of its roadbed and track, and the operating and running of its train.

That the court erred in instructing the jury that the derailment of the car in which plaintiff was riding at the time of the wreck was *prima facie* evidence of defendant's negligence, and that it was the duty of defendant to know and show the facts.

We believe the foregoing assignments to be without merit, and to be thoroughly disposed of in the recently decided case of *Murphy* v. *Southern Pacific Company* in 32 Nev. 120, wherein, among other things, we stated: "The law is also well established that a railroad acting in the capacity of a common carrier of passengers is bound to use the utmost care and diligence for the safety of the

passengers, and is liable for any injury to a passenger occasioned by the slightest negligence against which human prudence and foresight should have guarded."

As to the soundness of the doctrine on which railroad carriers are bound, in so far as the law pertaining to the degree of care and negligence is concerned, which we announced in *Murphy* v. *Southern Pacific, supra,* which doctrines are still seemingly questioned by counsel for appellant, as illustrative of the trend of modern authorities in support of those doctrines as held in said case, above quoted, we believe it will be profitable to cite the following excerpts from opinions sustaining the law as previously announced by this court:

"The company is bound to the highest degree of care and utmost diligence to prevent their (passengers') injury." (2 Rorer on Railroads, p. 1436; Shearman & Redf. Neg. 226.)

"Street railway companies as carriers of passengers for hire are bound to exercise the highest degree of care and diligence consistent with the nature of their undertaking, and are responsible for the slightest negligence." (*Smith* v. *St. Paul C. R. Co.,* 32 Minn. 312, 20 N. W. 238.)

In the case of *Southern Pacific Company* v. *Hogan,* decided April 2, 1910, reported in 108 Pac. 240, the Supreme Court of Arizona said: "A railroad company must exercise the highest degree of care practicable in carrying passengers.   *   *   *"

"Where a passenger is injured by derailment or collision of a train, there is a presumption of negligence by the company requiring evidence to rebut it." (*Denver Railroad Co.* v. *Woodward,* 4 Colo. 1; *Peoria R. R. Co.* v. *Reynolds,* 88 Ill. 418; *Pittsburg R. R. Co.* v. *Williams,* 74 Ind. 462; *Seybolt* v. *New York R. R. Co.,* 95 N. Y. 562, 47 Am. Rep. 75; *Bergen R. R. Co.* v. *Demarest,* 62 N. J. Law, 755, 42 Atl. 729, 72 Am. St. Rep. 685.)

Numerous authorities supporting the above rule are collated in a valuable note to *Overcash* v. *C. E. R. L. Co.,* 144 N. C. 572, 57 S. E. 377, 12 Am. & Eng. Ann. Cas. 1040.

"Carriers of passengers for hire are bound to exercise

the utmost skill and prudence in conveying their passengers, and are responsible for the slightest negligence or want of skill in either themselves or their servants." (*Sales* v. *Western S. Co.*, 4 Iowa, 547; *Bonce* v. *Dubuque S. R. Co.*, 53 Iowa, 278, 5 N. W. 177, 36 Am. Rep. 221.)

"In case of common carriers of passengers the highest degree of care which a reasonable man would use is required by law." (*Derwort* v. *Loomer*, 21 Conn. 245.)

"Passenger carriers bind themselves to carry safely those whom they take into their coaches to the utmost care and diligence of very cautious persons." (*Maverick* v. *8th Avenue R. Co.*, 36 N. Y. 378: *Carroll* v. *Staten Island R. Co.*, 58 N. Y. 126, 17 Am. Rep. 221.)

"The trial judge, at the request of the transit company, gave the jury the following instruction: 'While it is the duty of the defendant, as a carrier of passengers, to exercise proper care for their safety, yet the defendant is not an insurer of the safety of its passengers, and not liable to them for injuries resulting from such defects in its means of transportation as could not have been guarded against by the exercise of care on its part, and which are not due in any way to negligence on its part.' 'The test of negligence in such cases is whether the defect ought to have been observed practically, and by the use of ordinary and reasonable care.' * * * The rule, as gathered from the foregoing authorities, requires that a common carrier of passengers shall exercise more than ordinary care. It requires the exercise of extraordinary care, the exercise of the utmost skill, diligence, and human foresight. It makes the carrier liable for the slightest negligence. It follows from the foregoing that the giving of the instruction complained of was error." (*Spellman* v. *Lincoln R. T. Co.*, 36 Neb. 892, 55 N. W. 270, 20 L. R. A. 318, 38 Am. St. Rep. 753.)

"A common carrier is not an insurer of the safety of its passengers, but it is required to exercise the highest degree of care and diligence that is reasonably practicable in securing their safety by keeping its cars and appliances in a safe condition, and at all times under the control

and management of skilled and competent servants."
(*McAllister* v. *People's Ry. Co.*, 4 Pennewill (Del.) 276,
54 Atl. 744.)

"In affirming defendant's fifth point, the court fixed
too low a standard for the duty of the railway company.
More is required of a common carrier than mere reason-
able precaution against injuries to passengers, and care
that its cars and appliances are to be measured by those
'in known general use.' While the law does not require
the utmost degree of care which the human mind is capa-
ble of imagining, it does require that the highest degree
of practical care and diligence shall be observed that is
consistent with the mode of transportation adopted."
(*Palmer* v. *Warren St. Ry. Co.*, 206 Pa. 581, 56 Atl. 51, 63
L. R. A. 507.)

"The principles of law regulating the duty owed by
a common carrier of passengers are in many respects
analogous to those which control a common carrier of
goods. A common carrier of goods for hire is bound to
deliver them safely, and from this duty can only be exon-
erated by the act of God or of a public enemy. He is an
insurer of their safety. With respect to passengers, a
common carrier is bound to use the utmost care and dili-
gence for their safety. Plaintiff in error is a railroad
company. It was chartered and is operated for the car-
riage of goods and passengers. Its duty as such is meas-
ured by the principles just announced. With respect to
goods it is an insurer. Its duty with respect to passengers
is to exercise the highest degree of care for their safety."
(*Norfolk & W. Ry. Co.* v. *Tanner*, 100 Va. 379, 41 S. E. 721.)

"As I told you, that is the question of law in the case,
and our courts have held that, where that relationship is
established, then the law casts upon the person who car-
ries, called the 'carrier,' the highest degree of care with
reference to the passenger carried. Now, that is simple
enough. That is the law of the case. If you find from
the evidence that plaintiff was injured by a collision
between two of defendant's cars, while a passenger
thereon, then I instruct you that the colliding of the cars

of defendant is presumptive evidence of negligence on the part of the company." (*Carroll* v. *Charleston & S. R. Co.*, 65 S. C. 383, 43 S. E. 871.)

"Carriers of passengers are bound to exercise all possible skill, foresight, and care in the running of their cars, so that passengers may not be exposed to danger on account of the manner in which the cars are run. * * *" (*Topeka City Railway* Co. v. *Higgs*, 38 Kan. 376, 16 Pac. 669, 5 Am. St. Rep. 754.)

"Railway passenger carriers in legal contemplation do not insure the absolute safety of their passengers; but they do bind themselves to exercise the utmost degree of human care, diligence, and skill, in order to carry their passengers safely. It is meant by this rule (1) that the highest degree of practicable care and diligence should be exercised that is consistent with the mode of transportation adopted; (2) that competent skill should be possessed, which should be exercised in the highest degree. Tested by this rule, for the slightest neglect against which human prudence, diligence, or skill can guard, and by which injuries accrue to passengers, the carriers will be liable in damages. This high degree of care, diligence, and skill extends, not only to the running of passenger trains, with a view to the safety of passengers, but to providing against defects in the road, cars, or machinery, or any other thing that can or ought to be done in order to carry passengers safely. Among these duties is that of keeping the track clear of obstructions and of removing timber and bushes along the track on the land of the company, so as to keep the engineer's view of the track, in running the train, unobstructed. A failure to do this, or any of the duties above mentioned, is negligence. *Prima facie*, where a passenger, being carried on a train, is injured by an accident occurring to the train, the legal presumption arises that the accident and consequent injury was caused by the negligence of the carriers and the onus of disproving the presumption of negligence, by showing that the injury arose from an accident which the utmost care, diligence, and skill could

not prevent, is on them." (*Louisville & N. R. Co.* v. *Ritter's Admr.*, 85 Ky. 368, 3 S. W. 591.)

"The car leaving the track was *prima facie* evidence of negligence. This presumption may be rebutted by showing that the injury arose from an unavoidable accident, or an occurrence which could not have been prevented by the utmost skill, foresight, and diligence. Railways are not insurers of passengers. But passenger carriers by railway are bound to the utmost diligence which human skill and foresight can effect, and if an injury occurs, by reason of the slightest omission in regard to the highest perfection of all the appliances of transportation, or the mode of management at the time the damage occurs, the carrier is responsible." (*Eureka Springs Ry. Co.* v. *Timmons*, 51 Ark. 467, 11 S. W. 692.)

"When carriers undertake to convey persons by the powerful, but dangerous, agency of steam, public policy and safety require that they be held to the greatest possible care and diligence, and whether the consideration for such transportation be pecuniary or otherwise, the personal safety of the passengers should not be left to the sport of chance or the negligence of careless agents. Any negligence, in such cases, may well deserve the epithet of 'gross.'" (*Philadelphia & R. R. Co.* v. *Derby*, 54 How. 468, 14 L. Ed. 502.)

"In the performance of the duties imposed by its contracts with passengers, a carrier is held to the exercise of the highest degree of care." (*Laub* v. *C. B. & Q. Ry. Co.*, 118 Mo. App. 495, 94 S. W. 552.)

"As we have said, this is a case between a passenger and a carrier of passengers to recover damages for an injury sustained by the passenger in consequence of the negligence of the carrier during the period the above-named contractual relation existed between them. The degree of care required by such a carrier and the precise duty which it owes to such a passenger is clearly defined in the law. The carrier owes to the passenger the exercise of the utmost care and diligence which human foresight can use, though not an insurer of the safety of the

passenger." (*Philadelphia B. & W. R. Co.* v. *Allen,* 102 Md. 112, 62 Atl. 246.)

"The street railway company was bound to use the highest degree of care for the safety of its passengers, and, in case of an injury to a passenger from the result of a collision, the burden is upon it to show that it was not guilty of any negligence which in whole or in part caused the injury." (*Forsythe* v. *Los Angeles Ry. Co.*, 149 Cal. 569, 87 Pac. 24.)

"We think the nonsuit was improperly granted. The plaintiff's intestate occupied this position on the running board because there was no vacant seat in the car, nor standing room between the seats. This was not negligence *per se*. If the railroad company accepts passengers whom it cannot accommodate inside its car, it must do all that human care and vigilance reasonably can to prevent accident happening to them." (*Verrone* v. *Rhode Island Sub. Ry. Co.*, 27 R. I. 371, 62 Atl. 513, 114 Am. St. Rep. 41.)

"There was no error in the refusal of the court to give the general charge in favor of the defendant. While it is true that the obligation of a carrier of passengers is not that of an insurer, yet it is held to the highest degree of care, and is bound by its contract to protect the passenger against any injury from the negligence of its employees." (*Louisville & N. R. Co.* v. *Mulder* (Ala.) 42 South. 743.)

"The law compels stage proprietors to furnish prudent and skilful drivers, and holds them liable for any injury that a passenger may receive on account of any negligence in this particular. (*McKinney* v. *Neil,* 1 McLean, 540; *Stockton* v. *Frey,* 4 Gill, 406, 45 Am. Dec. 138; *Farish & Co.* v. *Reigle,* 11 Grat. 697, 62 Am. Dec. 666; *Sales* v. *Western Stage Co.*, 4 Iowa, 547; *Stokes* v. *Saltontall,* 13 Pet. 181, 10 L. Ed. 115; *Sawyer* v. *Dulany,* 30 Tex. 479; Redfield on Carriers, sec. 340; Angell on Carriers, sec. 569.)" (*Schafer* v. *Gilmer,* 13 Nev. 338.)

" 'Reduced to the simplest form, the rule may be stated to be that the carrier is bound to exercise the strictest diligence in receiving a passenger, conveying

him to his destination, and setting him down safely that the means of conveyance employed and the circumstances of the case will permit.'" (*Le Blanc* v. *Sweet*, 107 La. 368, 31 South. 772, 90 Am. St. Rep. 303.)

"It follows from the foregoing that the court did not err in instructing the jury that the only rule of diligence applicable to the facts of the case was the duty of extraordinary diligence, and in refusing to charge the law of ordinary diligence. A carrier of passengers in this state is bound to exercise 'extraordinary diligence on behalf of himself and his agents to protect the lives and persons of his passengers,' and this rule applies to the reception, transportation and discharge of such passengers." (*Georgia Ry. & El. Co.* v. *Cole*, 1 Ga. App. 36, 57 S. E. 1028.)

"The law is, as the jury were told, that carriers of passengers are liable for the slightest negligence. Any negligence on their part is actionable.   *   *   *   The twenty-second instruction asked by the appellant, and refused, reads thus: 'The court further instructs you that by "negligence," when used in these instructions, is meant either the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such person would not have done under the existing circumstances.' This instruction was properly refused. It is not proper in such a case as this to define negligence as it is defined in this instruction. In a case of this character, the omission to exercise the highest degree of practicable care constitutes negligence; but in other cases the failure to exercise ordinary care constitutes negligence. Counsel are greatly in error in asserting, as they do, that the instruction correctly furnishes the standard for the government of the jury. The appellant was, as we have substantially said, bound to do more than prudent men would ordinarily do, since it was bound to use a very high degree of care." (*Louisville, New Albany & C. R. Co.* v. *Snyder*, 117 Ind. 438, 20 N. E. 286, 3 L. R. A. 435, 10 Am. St. Rep. 60.)

"Plaintiff in error contends that the court erred in giving instruction 5, which is as follows: 'You are instructed that, under the law of this territory, a carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill.' It is sufficient answer to this contention to say that this instruction was in the language of our statute, which provides the degree of care which a common carrier for hire must exercise. * * * But it is contended by the learned counsel for plaintiff in error that this provision of our statute is not applicable, since the collision of defendant's trains occurred in Kansas, and the carriage of the plaintiff was in the nature of interstate commerce, and was not under state control. This contention is not well taken. Independently of any statutory provision, the instruction correctly states the law, upon principle as well as sound public policy." (*Chicago R. T. & P. Ry. Co.* v. *Stibbs,* 17 Okl. 97, 87 Pac. 293.)

"Appellant requested the court to charge: 'That it is the duty of a street railway company, engaged in operating street cars for the carrying of passengers, to exercise a high degree of care and diligence to prevent accident to its passengers; that is, it must use the highest degree of care and diligence which is reasonably practicable under the circumstances of the case,' etc. The court declined to give the request, and wholly failed to charge that such degree of care and diligence is owing by a common carrier to its passengers. The degree of care charged was only that of ordinary care; that is, 'negligence consists in the doing of some act, or the omission to do some act or perform some duty which a reasonable and prudent person ought or ought not to do,' and that 'reasonable care and precaution, as mentioned in these instructions, means that degree of care and caution which might reasonably be expected from an ordinarily prudent person,' etc. So far as the degree of care required of a common carrier of passengers, the jury was not given to understand that it was any greater than that required to be exercised

by the defendant towards persons not passengers, or any greater than ordinary care. Street railway companies are common carriers of passengers, and, as such, are bound to exercise for the safety of their passengers more than ordinary care. The many different forms of expression used in the text-books, and by the courts, in stating the rule as to the degree of care required of a carrier in conveying passengers, all recognize substantially the same test—that is, the highest degree of care, prudence, and foresight consistent with the practical operation of its road—or, as it is sometimes expressed, the utmost skill, diligence, care, and foresight consistent with the business, in view of the instrumentalities employed, and the dangers naturally to be apprehended, and that the carrier is held responsible for the slightest neglect against which such skill, diligence, care, and foresight might have guarded. (3 Thomp. Com. L. of Neg., secs. 2722–2729; 2 Shear. & Redf., sec. 495; 5 Am. & Eng. Ency. Law, 558; Nellis, St. Rd. Acct. L., sec. 6; Booth, St. Rys., sec. 328.) Appellant was entitled to have the law given to the jury substantially as in the request stated." (*Paul* v. *Salt L. City R. Co.*, 30 Utah, 47, 83 Pac. 564, 565.)

"The court charged the jury that appellee owed the duty under the law 'to exercise that high degree of care for the reasonable personal safety of passengers on its cars which a very prudent and competent person would use under the same or like circumstances,' etc. We suggest on another trial that the word 'reasonable' be omitted, since it might be understood to ingraft a limitation upon the well-defined duty of carrier to passengers to exercise the highest degree of care for such passenger's safety." (*Moore* v. *Northern Tex. Tract. Co.*, 41 Tex. Civ. App. 586, 95 S. W. 653, 654.)

The final assignment of error of appellant urging the insufficiency of the evidence to justify the verdict, and as to other assignments which we believe to be without merit for the reasons heretofore given in this opinion, we believe, after a painstaking review of the evidence, that we would not be warranted in disturbing the verdict

of the jury after the fair trial had in the trial court.
Neither do we believe that the judgment should be dis-
turbed because of the alleged excessiveness of the dam-
ages. These questions were fairly submitted to a jury
under instructions of law, which we believe to be proper,
and there was sufficient material evidence adduced to
support the verdict.

The judgment of the lower court is affirmed. It is so
ordered.

### ON PETITION FOR REHEARING

By the Court, SWEENEY, C. J.:

On the 3d day of December, 1910, in an opinion unani-
mously agreed to by this court, we affirmed a $15,000
judgment awarded to the plaintiff by a jury against the
defendant for injuries sustained in a railway accident by
reason of a derailed car on which the plaintiff was riding
as a passenger at the time of receiving the injuries.
Counsel for appellant petitions for a rehearing upon the
following grounds:

" (1) Because this court inadvertently misconstrued
evidence in assuming that the conductor and engineer
in charge of the wrecked train were not called as wit-
nesses.

" (2) That the court did not pass upon the question as
to the power of the trial judge to instruct the jury that
there was a presumption of negligence from the mere
happening of the wreck, after the defendant had offered
some evidence tending to prove that there was no negli-
gence on its part."

Both of these grounds urged for a rehearing are ably
and elaborately discussed in appellant's petition for a
rehearing, which we have given thorough and serious
consideration. We are still convinced, however, that the
judgment affirmed in our opinion should not be disturbed.

We desire to confess inadvertently asserting the fact
that the conductor and engineer in charge of the wrecked
train were not called as witnesses, which we were led in
error to make by reason of one of the briefs of counsel,
but still insist that, if such were the fact, the law as

expressed in the opinion on this point is sound, and that had the company failed to have called them as witnesses, having been in charge of the train as they were at the time of the wreck, they would still be considered to be in the employ of the company until the contrary was shown or their absence explained by the defendant company, and, if not called as witnesses or their absence explained or accounted for to the jury, that it would be legitimate argument before the jury for counsel of the plaintiff to have argued that their testimony might be adverse to the company, and such argument would not be prejudicial error.

The record shows that the remarks made by counsel for the plaintiff during the course of his argument were in reference to an engineer and conductor of another train, which, by the report of Conductor Trousdale of the wrecked train, were named as persons "who witnessed the accident or can give any information regarding it," and the inadvertence was in referring to these parties in the former opinion as being the engineer and conductor, respectively, of the wrecked train.

A further examination of the record in regard to this assignment of error discloses that counsel for the plaintiff withdrew his remarks with reference to the failure of defendant to call these witnesses, and that the final exception taken by counsel for the defendant did not go to this portion of his remarks.

We quote from the record the following excerpt bearing upon this proposition:

"Mr. Shoup: Upon both propositions; that is, as to the witnesses as well as the injuries?

"The Court: As to the witnesses? Mr. Shoup: Yes.

"The Court: I do not understand that counsel desired to extend to that.

"Mr. Cheney: Well, it is immaterial, if the court please. If counsel objects to what I said about these other parties, as to the conductor or engineer not being witnesses, that may be withdrawn, if desired.

"Mr. Shoup: We desire to have an exception to the

ruling of the court as to the contents of the report. So far as it relates to the plaintiff's injuries, we would like to have an exception upon that.

"The Court: Note the exception."

However, aside from this inadvertent statement concerning the nonattendance of these witnesses, when, in fact, they were present and testified, in view of the failure of the company to account for the accident to the satisfaction of the jury and overcome the *prima facie* presumption of negligence against the company, which always arises in law when the plaintiff proves the derailment of the car, and which the defendant must overcome, we can see no such material prejudice suffered by the defendant by reason of the remarks of counsel for the plaintiff to warrant this court in reversing the judgment. The plaintiff proved that he was a passenger with paid fare on one of defendant's trains, that the train was wrecked, and by reason of said wreck he received certain physical injuries.

Plaintiff further proved that the train was operated by the defendant company, and that whatever defect there was either in the roadbed, train, or its operation which caused the derailment, that such knowledge is presumed in law to be peculiarly within the knowledge of the defendant, and its officers and agents, and without the knowledge of the respondent.

Having proved these facts, the plaintiff was privileged to rest his case, and, in the absence of any other proof, the wreck would be inferred, as a matter of law, to be caused by the defendant's negligence, and plaintiff entitled to judgment, unless this presumption was rebutted, which fact of whether or not the presumption is overcome is for the jury to determine from all the evidence adduced.

The law which we have laid down in our opinion we believe without any question of doubt to be the law and supported by the great weight of modern authority to the effect that, "where a passenger is injured by the derailment or collision of a train, there is in law a presumption of negligence, which immediately arises against the com-

pany, requiring evidence by the company to rebut it." If we have failed to make ourselves clear on this point, we desire to reaffirm that in our judgment there is no question but that this is sound law, and founded on reason and justice.

Unquestionably the lower court had the legal power to instruct the jury that there was a presumption of negligence arising against the company when the wreck was proved to have been the result of a derailment, and while the company had the privilege and authority, and it was its duty to rebut this presumption if it could, yet we believe there was no invasion of the exclusive function of the jury, as declared by counsel in his petition for a rehearing, when the court instructed the jury, even after the defendant had given some evidence tending to prove there was no negligence on its part. The presumption of negligence against the company arose immediately upon the plaintiff proving the accident to be due to the derailed car, and it was for the jury to determine from the evidence in rebuttal to this presumption, which arises in law, as to whether or not the company sufficiently rebutted this presumption.

When a passenger buys a ticket on a passenger train and enters his compartment of travel, he practically places his life and limb in the custody and care of the railroad company, and having paid for the privilege of riding, with no authority to employ or select the employees of the carrier, to inspect its train or construct its roadbed, he has the right to rely upon the carrier for safety whilst on his journey, and it is both right and just that the responsibility of seeing the passenger is safely conveyed rests solely upon the company; and if a collision or derailment of the train or car on which he is traveling occurs by reason of faulty construction of the car or the roadbed, or by reason of neglect of some of the company's employees, it is right and proper that the burden of proving that they are not in default in any of these respects rests upon the company, and the law is well and justly settled that the presumption of negligence arises against

the company whenever a derailment or collision takes place.

The rule as to the liability of the carrier was very fully elucidated in a number of other instructions given to the jury, and it cannot be said, we think, that the jury was not fully instructed upon the rule of liability and the proof the defendant was required to offer to relieve itself from liability for the accident and the injury resulting therefrom. We think the jury was fully and fairly instructed, and that a greater degree of proof was not required of defendant than the law imposes, and that the force, extent, and limitations of the presumption of negligence arising from the accident was fully pointed out to the jury and the defendant's position in the law fully presented. (*Murphy* v. *Southern Pac. Co.*, 31 Nev. 120; *Burch* v. *Southern Pac. Co.*, 32 Nev. 75; *Sherman* v. *Southern Pac. Co.*, 33 Nev. 385.)

Again, we reaffirm the law to be sound and well settled that "where a passenger proves that he was injured by a collision or derailed train that there is in law a presumption of negligence against the carrier," and in view of the thorough review which we gave to the case in our original opinion, and being still satisfied after a review of the same that the law therein stated is correct, the petition for a rehearing must be, and is hereby, denied.

Let such be the order.